Sarah Gordon, Administratrix of the Estate of William F. Gordon, Deceased, Appellant, v. Chicago, Rock Island & Pacific Railway Company, Appellee.

**Master and servant:** SAFE PLACE TO WORK: APPLICATION OF RULE.
1  The rule requiring an employer to furnish a reasonably safe place for his servant to work applies to a railway company, in the care and maintenance of its tracks and other places in which its employees are required to work.

**Same:** RAILROADS: DEFECTIVE ROAD-BED.  Where a railroad company
2  permitted its track over uneven ground to remain in a rough and unballasted condition, causing the cars to roll back and forth and having a tendency to uncouple and cause them to jump the track, there was a failure to exercise reasonable care for the safety of its train operators.

**Same:** EVIDENCE.  In this action for injury to a fireman while in
3  performance of his duties on top of the tender to the engine, the evidence is reviewed and held to justify a finding that the accident was caused by a collision of the uncoupled sections of the train.

**Same:** PERSONAL INJURY: OPPOSING THEORIES.  In establishing a ques-
4  tion of negligence either by direct or circumstantial evidence the plaintiff need not negative every other conceivable hypothesis which might account for the injury; it is only where opposing theories of an accident are equally reasonable with the proven facts that there is a failure of the evidence as a matter of law.

**Same:** NEGLIGENCE: EVIDENCE.  In this case the evidence that the
5  uncoupling of the train while in motion was due to the defective condition of the track is sufficient to take that issue to the jury.

**Assumption of risk:** BURDEN OF PROOF: SUBMISSION OF ISSUE.  As-
6  sumption of risk by a servant is an affirmative defense on which the employer has the burden of proof.  And where the issue involves, as in this case, the question of whether the employee knew of the negligence of which he complained, and whether he

understood and appreciated or ought to have understood and appreciated the peril to which he was thereby exposed, and whether with such knowledge and appreciation he continued in the service, the question is for the jury and not for the court.

**Same:** CONCURRENT NEGLIGENCE: LIABILITY OF EMPLOYER. Where the negligence of the employee concurs with the negligence of a fellow-servant in causing an injury, the fellow-servant rule has no application, and the employer is liable for the injuries occasioned.

*Appeal from Polk District Court.*—Hon. W. H. McHenry, Judge.

TUESDAY, DECEMBER 20, 1909.

REHEARING DENIED, WEDNESDAY, MARCH 16, 1910.

ACTION at law to recover damages for personal injuries to plaintiff's intestate. At the close of the testimony, the court directed a verdict for the defendant, and, from the judgment entered thereon, plaintiff appeals.— *Reversed.*

*William G. Clark,* for appellant.

*Carroll Wright* and *J. L. Parrish,* for appellee.

WEAVER, J.—At the time of the accident, January 20, 1898, the defendant company was operating a line of railway in the then territory of Oklahoma, and plaintiff was there in its service as a locomotive fireman, when he claims to have been injured in the following manner: He alleges that as the freight train on which he was employed was approaching the station at Minco, about daylight in the morning, he went out upon the top of the tender in the discharge of his ordinary duty to assist in supplying the engine with water. At this time, and with-

out his knowledge, the train had broken apart into two
sections, and the rear section, not being under control, was
following the other with the momentum acquired from a
sharp downgrade over which they had passed, with the
result that, as he was standing upon the tender, the de-
tached section overtook and crashed with great violence
into the section upon which he was engaged, throwing
him to the ground beneath the wheels, and crushing and
injuring his leg to such an extent as to require its ampu-
tation.    This result he alleges was brought about by the
negligence of the defendant in the construction and main-
tenance of its track; the same being rough and uneven
and out of repair, thereby causing moving freight trains
to be jolted, twisted, and wrenched apart, and by its neg-
ligence in failing by proper rule to regulate the speed of
its trains over such track in a manner to guard against its
known dangers.

He further alleges that for a considerable distance
in approaching Minco from the direction in which the
train was moving there is a steep descending grade, which,
before entering the yard, changes to an ascending grade,
causing a depression or sag in passing over which car
couplings were liable to be disconnected, by reason of all
which said track was not constructed or maintained in a
reasonably safe condition for the use of the employees
operating trains thereon.    Other charges of negligence are
stated in the petition, but they do not appear to be involved
in this appeal, and we shall not consider them.    The
answer puts in issue all the allegations of the petition,
and pleads assumption of risk by the plaintiff.    At the
close of the testimony the defendant moved for a directed
verdict in its favor on grounds which may be stated as
follows:    (1) There is no evidence of negligence on the
part of defendant with respect to the construction or con-
dition of its track.    (2) There is no negligence shown
on the part of defendant with respect to the couplers with

which the train was equipped, and plaintiff had assumed the risk of their use by remaining in defendant's service. (3) There is no evidence of negligence on defendant's part in failing to regulate by appropriate rules the speed of its trains at the place of the injury and plaintiff had assumed the risk arising from such omission if any. (4) There is no proof of negligence by other employees of defendant causing the plaintiff's injury, and that under the laws of the territory where the injury occurred the negligence of a fellow servant gave plaintiff no right of action against his master.   (5) There is no proof of negligence on defendant's part in the repair or maintenance of the track or that such negligence, if any, caused the injury complained of, and that plaintiff assumed the risk arising therefrom. (6)   That the evidence as a whole will not sustain a finding in plaintiff's favor upon any theory of the case.   This motion was sustained generally, and, verdict and judgment entered accordingly, plaintiff appeals.

This cause was before us in *Gordon v. Railroad Co.*, 129 Iowa, 747, where we reversed an order sustaining a demurrer to the petition which we found to state a good cause of action, and, so far as the decision there rendered is applicable to questions arising on this appeal, it must be regarded as decisive of the law.   Before the cause came on for the second hearing, Gordon died, and his administratrix has been substituted as plaintiff.

I.   Does the record present any evidence tending to show negligence by defendant in the construction or maintenance of its track?   That the general rule which obligates a master to furnish his servant a reasonably safe place to work applies to railway companies in the care and maintenance of their tracks and other places in and upon which their employees are required to perform service is too well established to require argument.   *Gordon v. Railroad, supra,* and cases cited.

1. MASTER AND SERVANT: safe place to work: application of rule.

Relevant to this issue, Gordon testified that the track was "bad;" "part of the grade was uphill and part downhill; it was awfully rough track;" "there were sags;" "the joints were up and down;" "where the track would be rough the cars would roll back and forth with a tendency to go off the track;" "such sags would have a tendency to break the cars in two—to uncouple them;" "I couldn't say how deep these sags were being in the engine. I only knew there was a great sag there. It was out of the line ordinary. I could state approximately they might have been six or eight inches deep:" "the worst depressions were on the level between the two grades." No evidence was offered on the part of the defendant, and for the fact as to the condition of this track we have to rely solely on the statements of the plaintiff. We can not say as a matter of law that this undisputed testimony has no tendency to sustain the allegation that the track was not maintained in a reasonably safe condition. On the contrary, if the jury found the witness entitled to credit and believed his statements, there seems to have been reasonable grounds on which to uphold a finding of negligence in this respect.

2. SAME: railroads: defective roadbed.

II. It is argued by appellee that, even if there was negligence on its part, it is not shown that defendant's injury was chargeable to such fault. Bearing upon this proposition, it is said that there is no sufficient evidence that the train was broken apart, or that plaintiff's injury was caused by the collision between the detached sections, or, if such evidence appears, it is circumstantial only, and not inconsistent with other reasonable theories not involving negligence by the company. The plaintiff, the only witness having personal knowledge of the accident (except the engineer, who neither affirms nor denies it, and probably was not at the moment in a position to see), testifies that, as the engine slowed down to the tank and he reached his station on the

3. SAME: evidence.

tender, he was about to reach up and pull down the over-hanging spout, when he glanced toward the rear of the train and "saw it had parted;" that he "could see the space between the cars," and the caboose lights "looked like they were coming." He says that almost instantly, and before he had time to do anything for his own safety, "The hind end came up and struck the car." He also relates that immediately after his injury, when he was pulled from under the cars, he addressed the engineer, saying, "My God! Ben, they were broke in two," and the latter responded "Yes." On cross-examination he says the cars attached to the engine as far back as he could positively observe were box cars, but he could not say whether there may not have been flat cars in the train. The box cars were higher than the tender, and he could not see over their tops to distinguish a flat car if any there was coupled behind them, but he did not think that what he described as a space between separted parts of the train was only a space in the connected train occupied by flat cars. Of the force of the impact or concussion by which he was thrown from the tender he says: "It knocked the train by the tank, and the air was put in the emergency. I did not see the air put on. . . . I heard it. The shock and the recoil at the time. I was thrown from the tender was far greater than the slack running up. It was far greater."

The engineer testifies: "The engine was pushed forward by the concussion two car lengths, and I shut the air as soon as I could." And, while he says that the concussion might have been caused by the "running up of the slack," he further says: "My attention was not called to the fact that the caboose was knocked off its center till we got to Chickasha. We discovered it there. The shock was greater than the ordinary movement of trains. It was the most severe shock I had ever experienced in operations of that character at that time." This witness does

not deny the statement which plaintiff attributes to him immediately after the accident. On being recalled, he says, in substance, that he had given a comparatively slight application of air before Gordon fell in order to slow down for the stop at the tank, but that, on reaching a point two or three car lengths from the tank, he found that he was likely to stop short of it, and therefore released the air.

In the face of this record, it will not do to say that there is no evidence of the parting of the train, or that, if it did separate, there is no evidence that plaintiff's fall from the tender was caused by a collision between the two sections. Plaintiff swears that the train was broken, that he saw the space between the sections, and that the rear section appeared to be following in the direction of the front section. True, he says his view was brief, almost instantaneous, but the message of a visible object through the eye to the brain requires hardly a measurable space of time. The witness was apparently in a place to see and know something of the matter, and to this extent at least his evidence is direct, and not circumstantial. In so testifying he either commits perjury, or, being honest and truthful, he is mistaken, and did not see what he says he saw, or he tells the facts as they actually occurred before his eyes. It is unnecessary to stop here to argue that these questions are for the jury alone to answer.

The case so made is not to be disposed of by the suggestion that other reasonable theories may be advanced to explain plaintiff's injury. Even in a case depending on circumstantial evidence alone to establish negligence, the plaintiff is not bound to negative every other conceivable theory or hypothesis which ingenuity may invent to account for his injury. It is only where opposing theories are equally reasonable and equally consistent with the proved or admitted facts that plaintiff must fail as a matter of law. The

4. SAME: personal injury: opposing theories.

only theory advanced by the defendant in the instant case to account for the plaintiff's being thrown from the tender is that the concussion which is shown to have occurred may have been caused by the running up of the slack in the train. But this we think is not only inadequate in itself, but it appears to be distinctly negatived or at least discredited by facts shown without dispute. To say nothing of plaintiff's story, the testimony of the engineer, who discloses no bias in plaintiff's favor, is not reasonably reconcilable with such explanation. The concussion he says was very violent—more so than any he had ever before experienced in that line of work.

Moreover, if his testimony be true that he had slowed down the train to such a degree that, when within two or three car lengths of the tank, he saw he would come to a stop before reaching it, and he had to let off the air brakes in order to make this short distance, it would seem very evident that the momentum acquired by the cars at the rear must have been practically exhausted, and the renewed momentum created in moving an additional two or three car lengths is wholly insufficient to explain the unusually violent concussion which followed. Counsel say that, after the accident, the train was found fully coupled together, and that this fact conclusively demonstrates the plaintiff's mistake. But the fact thus relied upon is not itself sustained by such an array of evidence that we can say it is conclusively established, and, if established, it is not shown to conclusively negative the plaintiff's assertion that the train was broken in two at the time he says it was. The only evidence with respect to this feature of the controversy is that of the engineer, who says that, after the accident, "we pulled the train up and put it on the side track. So far as I know, the cars were all coupled up at that time. I did not make any movement for the purpose of coupling. If any of the cars had been uncoupled, it would have been necessary to have made

some movement of the engine to have coupled them together." This falls far short of a statement that the train was not parted at the time Gordon says it was. If the engineer was able to swear that it did not break, it was easy for him to say so; but he did not say it and the interpretation which appellee puts upon his testimony is at best an inference or argument. But, even if he had distinctly denied Gordon's assertion, it would have at the most provided a conflict in the testimony upon one of the material facts, and thus again have made a question for the jury.

III.   Is there any evidence from which the jury could have found that the alleged uncoupling of the cars while the train was in motion was caused by the defective track?

5. SAME: neg-
   ligence: evi-
   dence.

There was evidence that the break was discovered immediately after passing over the alleged defective place in the track. It was also shown that such defects cause cars moving rapidly over them to be thrown or twisted in a manner which is liable to disconnect the couplers. Gordon also testifies that in passing the point in question the engine received an unusual jolt. Assuming that the train did separate, as we must for the purposes of this appeal, the testimony affords a reasonable explanation of its cause. No other explanation is advanced or sought to be shown. There was therefore no such failure of proof in this respect as to justify a directed verdict.

IV.   Can it be said as a matter of law that Gordon assumed the risks arising from the alleged defective track? Assumption by the servant of risk of his employer's negli-

6. ASSUMPTION
   OF RISK: bur-
   den of proof:
   submission
   of issue.

gence is an affirmative defense upon which the employer has the burden of proof, and it is only in rare instances that, upon a contested question of fact, the court may properly direct a verdict in favor of the party having the burden of proof. The defense here presented involves an

inquiry whether Gordon knew or ought to have known the condition of the track of which the petition complains, and whether he understood 'and appreciated, or ought to have understood and appreciated, the perils to which he was thereby exposed, and whether with such knowledge and appreciation he continued in the company's service. This can only be determined by a consideration of his evidence and giving him the credit, if any, to which he appears to be entitled as a witness, and this it is manifest is not within the province of the court.

V. Finally, it is argued that, assuming that the train did seperate, the cause of the collision between the detached sections was the negligence of the trainmen 'in failing to obey the admitted rule of the company requiring them to be on the lookout to detect such accidents, and to take the necessary measures to prevent injury therefrom, and that, under the law which prevailed at the time and place of the accident, a master is not liable to his servant for injuries resulting from a fellow servant's negligence. But this can hardly be insisted upon with any degree of seriousness. Reduced to concrete terms, it requires the court to rule that a master may violate one of his nondelegable duties, thereby setting in motion forces threatening injury to his servant, and escape liability therefor by showing that another servant ought to have intervened to prevent the natural result of the master's neglect. The statement of the proposition is its own sufficient refutation. The trainmen may have been negligent in failing to discover the break in time to prevent the collision, but, if so, it is only another instance where the negligence of the master combines with the negligence of the fellow servant to occasion an injury to an employee. Under such circumstances, the authorities without exception, so far as we have been able to discover, hold that the fellow-servant rule has no application, and that the master is liable for

7. SAME: concurrent negligence: liability of employer.

the injury so occasioned.   See *Gordon v. Railroad, supra,* and cases there cited.

The necessary conclusion from the foregoing discussion is that the district court erred in directing a verdict against the plaintiff, and the judgment appealed from is therefore *reversed.*