ANNA L. GEORGE, Appellant, v. IOWA & SOUTHWESTERN RAIL-
WAY COMPANY, Appellee.

**APPEAL AND ERROR:** Directed Verdicts. A directed verdict may
1 not, on appeal, be aided by giving consideration to the fact that the trial court had the advantage of seeing and observing the witnesses.

**NEGLIGENCE:** Negativing Causes. Testimony as to the proxi-
2 mate cause of an injury is not in equipoise on two opposing theories when one theory has such support in the evidence as would fairly justify an impartial jury in finding that such cause was established, while the other cause has no support in the evidence, and is wholly theorized as a possibility.

PRINCIPLE APPLIED: A railway track was very rough and uneven, and by reason thereof the engine swayed and jerked in passing over the track, and created a condition which rendered it possible for one to be thrown from the engine. A post had been negligently placed very near the track. Deceased was in the performance of his duties as fireman on the engine. A very short time thereafter, at a point along the rough track, he was found close to the track, and with wounds and bruises on

his dead body. The jury might have found that his body hit the post. There was no evidence that he was sick or diseased. *Held*, the *possibility* that deceased fell from sickness or disease, and not from the lurch of the engine, was not sufficient to place the testimony in equipoise on the two conflicting theories.

NEGLIGENCE: No Eyewitness Rule. Principle recognized that a
3  presumption of due care arises, in the absence of eyewitnesses.

MASTER AND SERVANT: Rough Railway Track, Etc. An em-
4  ployee upon a railway engine may not be held to have assumed the risk attending the operation of an engine over a rough and uneven track, with a post negligently left in close proximity thereto, from the mere fact that he *knew* of such condition, unless the danger is so imminent that a reasonably prudent person would not have continued in the work—a question which is rarely one of law.

*Appeal from Page District Court.*—E. B. WOODRUFF, Judge.

### JUNE 24, 1918.

IN this, a suit to recover damages for the alleged negligence of defendant claimed to have resulted in the death of one John J. George, a motion to direct verdict for the defendant was sustained at the close of the testimony for the plaintiff, and she appeals.—*Reversed and remanded.*

*Earl R. Ferguson* and *C. R. Barnes*, for appellant.

*Orr & Turner* and *Tinley, Mitchell & Pryor,* for appellee.

SALINGER, J.—I.  The appellee insists the trial court was justified in directing verdict against the appellant, on the authority of *Meyer & Bros. v. Houck*, 85 Iowa 319, which, in effect, abrogates the scintilla of evidence rule theretofore prevailing in this jurisdiction, and empowers the court to direct a verdict against the party having the burden of proof, if the testimony is in such condition that, should the verdict be returned for that party, the court would unhesitatingly set the same aside. Appellee urges that, in applying

1. APPEAL AND ERROR: directed verdicts.

the *Meyer* case rule, this court should take into consideration that the trial court saw and heard the witnesses. The *Meyer* case did not intend to substitute the judge for the jury; and, in passing upon whether a verdict was rightly directed, we are not at liberty to aid the ruling by considering the advantage the trial judge had because the living witnesses were before him. Notwithstanding this valuable advantage, we must determine from the record before us whether there was such an absence of evidence for the plaintiff as to justify a direction of verdict for the defendant.

II.   So proceeding, it seems to us to be beyond dispute that, on the vital premise of one phase of this appeal, there is no serious controversy. Whatever the effect of it may be, it is beyond question that the jury could find the following things from the evidence:

2. NEGLIGENCE: negativing causes.

(1) That the roadbed was unballasted, rough, and uneven; (2) that a train going at 8 or 10 miles an hour at the point where decedent was injured would be caused thereby to sway, jerk, jump, to take up slack roughly, and that conditions generally made it possible that one upon the train would be thrown from it; (3) this tendency to lurch and sway would be increased when, as was the fact here, the supply of coal in the tender was low, thus making the train lighter. Speaking to the very part of the roadbed upon which the train was being operated when decedent was injured, one witness says that, at that point, "it is just up and down and just wabbly and any other way, just low places and high places, not even at all." Another says that, at this particular place, the track was not very even, and was pretty rough, and there was no ballast at this point; that, at the point in question, there is a hump, and the effect of this upon the tender in going over was that one could feel the shock when the engine swings onto it, and on dropping back after the engine got across it; that the engine would seem to run down there, and

take the slack of the train with a jerk when the engine once
more dipped upward; that the rough track will make the en-
gine bounce around.  One witness says it was "awful rough"
just before this point was reached, and, in going upon a
bridge in that immediate neighborhood, the track was "awful
rough;" and that, when they got on the bridge, they would
"just jump off again."  It is also testified there was a lot of
slack, and, as the engine would roll over the bridge, it would
jerk that slack around; that this would cause a jerking and
jumping and rocking, "just rocking back and forth, and it
would jerk every way."

Assume there may be debate over what deduction might
rightly be drawn by a jury from this evidence; yet the evi
dence does exist.  This record is not one wherein there is
no evidence to support a claim that there was this roughness
and swaying, and the question is, whether their existence
made it for the jury whether these conditions caused deced-
ent to fall from the train.

2-a

We are justified in saying that, on the whole case, ap-
pellee does not so much question that, under the testimony,
it might be true that decedent came to his death as the plain-
tiff claims, but takes the position that this is no more prob-
able or possible than that decedent might have been stricken
by an attack of heart trouble, vertigo, and the like, and thus
have come to fall from the train. Again, appellee does not so
much urge it was impossible for the death to have resulted
from contact with the post, but insists, rather, that that
is no more possible than that the man was already dead when
he fell from the train, because of something not due to the
negligence of defendant.  In other words, the main de-
fense of the judgment below is that the testimony was in
equipoise, as matter of law.

The law on the point is well settled: Undoubtedly, it
is not enough there is a mere possibility that the injury is

chargeable to the negligence of defendant, and a recovery may not rest wholly on conjecture. *Lunde v. Cudahy Packing Co.*, 139 Iowa 688, at 697. There is no case for a jury where the evidence leaves the happening of the accident a mere matter of conjecture, and as consistent with the theory of absence of negligence as with its existence. *Tibbitts v. Mason City & Ft. D. R. Co.*, 138 Iowa 178. Undoubtedly, the plaintiff fails if, as matter of law, the testimony is in equipoise. *Neal v. Chicago, R. I. & P. R. Co.*, 129 Iowa 5; *Asbach v. Chicago, B. & Q. R. Co.*, 74 Iowa 248, 251; *Rhines v. Chicago & N. W. R. Co.*, 75 Iowa 597. Undoubtedly, it does not suffice where a conclusion which is consistent with the theory of the plaintiff is, as matter of law, equally consistent with some other theory. *Wheelan v. Chicago, M. & St. P. R. Co.*, 85 Iowa 167. But, as said in *Lunde v. Cudahy Packing Co.*, 139 Iowa 688, at 697, this does not require plaintiff to prove either negligence or proximate cause, beyond a reasonable doubt; and, where the proven circumstances are such that different minds may reasonably draw different conclusions, or where all the known facts point to the negligence of the defendant as the cause, then, though the evidence be wholly circumstantial, proximate cause is for a jury. It suffices that inferences which plaintiff demands may fairly be drawn. *Kansas City So. R. Co. v. Leslie*, 112 Ark. 305 (167 S. W. 83, 89), approving *St. Louis, I. M. & S. R. Co. v. Hempfling*, 107 Ark. 476 (156 S. W. 171).

The true test is well stated in *Schoepper v. Hancock Chemical Co.*, 113 Mich. 582 (71 N. W. 1081), wherein it is said that the rule where the case rests wholly in conjecture does not apply, if there is room for balancing the probabilities and for drawing reasonable inferences better supported on one side than the other, even though the evidence for the theory of plaintiff is rebutted, but without disclosing any other probable cause.

It is said in *Lunde v. Cudahy*, 139 Iowa 688, at 701, if

any testimony bears on the question at issue, and there is afforded room for fair-minded men to conclude therefrom that one theory of the case is better supported than the other, the question cannot properly be withdrawn from the jury; that plaintiff is not bound to exclude the possibility that the accident might have happened in some way other than claimed by plaintiff, because to require this would be to require plaintiff to make his case beyond a reasonable doubt.   When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, then, in the absence of a showing of other cause, it is a warrantable presumption that the cause indicated in the testimony was the operative agency in bringing about the result.   *Brownfield v. Chicago, R. I. & P. R. Co.*, 107 Iowa 254, at 258; *Lunde v. Cudahy*, 139 Iowa 688, 701, 702; *Settle v. St. Louis & S. F. R. Co.*, 127 Mo. 336 (30 S. W. 125).   In establishing that injury is due to negligence either by direct or circumstantial evidence, the plaintiff need not negative every other conceivable hypothesis which might account for the injury.   It is only where opposing theories of the accident are equally in accord with the proven facts that the evidence of the plaintiff fails, as matter of law.   *Gordon v. Chicago, R. I. & P. R. Co.*, 146 Iowa 588.   An efficient and adequate cause of an injury may be termed the real or proximate cause thereof, unless another cause, not incidental to such cause but independent of it, has intervened and caused the injury.   *Davis v. Mercer Lumber Co.*, 164 Ind. 413 (73 N. E. 899).   If several proximate causes contribute to an accident, and each or all may be an effective cause, the result may be attributed to any or all of these causes.   *Burk v. Creamery Pkg. Mfg. Co.*, 126 Iowa 730.

The facts in *Kansas City So. R. Co. v. Leslie*, 112 Ark. 305 (167 S. W. 83, at 90), and in *Rickerd v. Chicago, St. P., M. & O. R. Co.*, 141 Fed. 905, are, in many respects, like those

at bar; and in these it was held that there was a case for a jury.

2-b

Plain as all this seems to be, the parties conflict sharply on how it bears upon their case. The appellant contends that, if the jury can reasonably find from the evidence that the negligence of defendant furnished cause adequate to produce the injury suffered, there is a case for the jury. The appellee construes our decisions that the plaintiff must fail where the testimony on liability is in equipoise, to mean that, if the trial court or this court are of opinion the testimony is in equipoise, and reach such conclusion because the injury is possible upon some theory other than the one advanced by plaintiff, and such other possible cause is not excluded, then there is a case for a directed verdict. If this be so, then, though the jury may reasonably find that a shot fired by the defendant caused death, a verdict must be directed for the defendant, if, in the opinion of the court, it is possible that someone other than defendant fired the shot. We do not believe the rule is as appellee contends. When a verdict has been directed, the appellate court, in reviewing that action, and in passing upon what the evidence showed, or what might legitimately be inferred from it, does not deal with what the trial court or the Supreme Court might infer, but inquires whether the jury, as reasonable and intelligent men, might legitimately conclude, from the proofs offered, that the accident occurred in the manner alleged by the plaintiff. *Lunde v. Cudahy,* 139 Iowa 688, at 702. The paramount question is whether the jury could legitimately infer, honestly using such abilities as they had, that the circumstances indicated that the condition of the track threw the decedent from the engine. We think that question was for the jury. We sum the cases we have analyzed not to hold that the plaintiff must submit to a direction against him, unless he shows, first, that something done or omitted

by the defendant is adequate to produce the injury suffered, and, second, excludes all possibility that the injury was caused by something other than such act of the defendant. To bring the case to a more concrete point: if the plaintiff shows that some act or omission of the defendant might adequately cause what resulted, and the jury may reasonably find that something other than the act of the defendant could also have produced the injury, testimony is in equipoise. But if the plaintiff shows that what the defendant did might accomplish what plaintiff suffered, it does not take the case from the jury merely because it is *possible* that the act of the defendant may not have been the cause—that it is possible that something else caused the injury. If, in the case before us, there were any evidence from which a jury could find the existence of some disease which might have caused decedent to stagger and fall off the train, there would be evidence of two equally adequate causes, and the testimony might be in equipoise, as matter of law. In the case supposed, one theory would, as matter of law, be as strong as the other. But it is only when the opposing theories have equal support as matter at law that it becomes the duty of the court to direct a verdict against the plaintiff. The case before us makes the line of demarcation clear. The plaintiff showed that something existed which could throw a man off the train; that one who had been on the train was lying on the ground dead, with wounds and contusions upon him; and these and other things disclosed circumstances indicating that decedent came in contact with a post placed close to the track. The jury could, in reason, find that the condition of the track, the act of the defendant, could and did initiate the injury suffered; and placing the post where it was, completed the injury. The defendant merely responds that all this might as well have happened if some adequate illness had caused decedent to stagger, and so to fall off the train. The difficulty is, there is no evidence

from which the jury could find that any disease existed—
that plaintiff shows an efficient cause for the injury suffered;
while the defendant theorizes upon what would be the state
of the case if it, too, had shown a differing adequate cause,
involving no negligence on its part. With nothing to meet
the showing by plaintiff that negligence on part of defen-
dant was adequate to cause the injury sustained, except a
claim that the same injury might have resulted from an
imagined cause which, if existing, would be adequate, it was
for the jury to say whether the theory advanced by plaintiff
was sustained by the evidence. Therefore, it was error to
direct a verdict for defendant.

We shall not stop to set out all the circumstances that
lead us to this conclusion. They are numerous. No one or
more of them, nor many taken together, might be at all
conclusive; but with no proof whereon to base the theory
advanced by defendant, all taken together, though not con-
clusive, made it a question for the jury whether or not de
cedent had come to his death as the petition charges—that
is, that the defective roadbed so swayed the engine upon
which the decedent was, in the performance of his duty, as
that he was thrown off and killed, by coming in violent con-
tact with a post placed by defendant.

III. We incline to the opinion the verdict was directed
on the sole ground that a recovery for the plaintiff would
rest on a mere guess, and that the court sustained the mo-
tion on the expressed and sole ground that
there was no evidence of what caused the
death of the decedent. But the briefs contest
all along the line. The appellant presents an exhaustive
brief for the proposition that freedom from contrib-
utory negligence was established by presumption, be-
cause there were no eyewitnesses. Of course, that is the gen-
eral rule; and the point would need no further considera-
tion, were it not for the claim of appellee that *Stark*

3. NEGLIGENCE:
   no eyewitness
   rule.

*v. Tabor & Northern R. Co.*, 161 Iowa 393, at 403, holds that the rule is not applicable, under the facts present in this case. It is said in the *Stark* case that, "At best, there was such a short period of time not covered by the testimony that no presumption can fairly arise that, during this short period, something occurred which would indicate that he used the degree of care required of him." The final reason is stated to be that there is no room for presumption relieving the deceased, "in view of direct testimony relating to his conduct at and just before he received his injuries." It seems to us that this states the rule, and not an exception to it. It but reiterates that the presumption arising from the love of life is not available where there is direct evidence relating to the conduct of the deceased at and just before he received his injury, and further, that such conduct was observed in the *Stark* case, except for so short a period of time as would be negligible.

We think freedom from contributory negligence was for the jury.

IV. We have exhaustive briefs on what does and what does not constitute an assumption of risk. The rules on this head are well settled, too. We incline to think, too, that the judge ruled expressly that assumption of risk was not a controlling factor in his decision. He said expressly he thought the motion was somewhat premature, because assumption of risk was a matter for defense. *Melody v. Des Moines Union R. Co.*, 161 Iowa 695, so holds, and points out that, by statute, the defense of assumption of risk can only be made available by pleading and proof that the danger was so apparent that a reasonably prudent man would not have continued in the service. Notwithstanding that, it is possible that, though such defense be not pleaded, that, if the testimony for the plaintiff showed there was assumption of risk, this would defeat recovery. But, as will be noticed,

4. MASTER AND SERVANT: rough railway track, etc.

both said statute and the case law do not defeat recovery merely because it was known that a roadbed was rough, and a post was too close to the rail, but only where the danger is so apparent that a reasonably prudent man would not continue in the service. Mere knowledge that the roadbed was in that condition, and the post in that place, is not enough.

Assumption of risk was held to be for a jury where the injury came from an overhead structure. See *Coles v. Union Terminal R. Co.*, 124 Iowa 48; *Bryce v. Chicago, M. & St. P. R. Co.*, 103 Iowa 665. For it is not knowledge that something exists which might cause injury that takes assumption of risk from a jury: that is for the jury, unless, in addition to knowing that the instrumentality was present, a reasonably prudent man should, as matter of law, have known and appreciated the danger. The matter is for the court only when the danger is so obvious and glaring that an ordinarily prudent man would not undertake the work in the face of such danger. *Hosheit v. Lusk*, (Springfield Court of Appeals) 190 Mo. App. 431 (177 S. W. 712). It is for the jury if there is a question whether the employees understood and appreciated, or ought to have understood and appreciated, not the presence of the instrumentality, but the peril to which it exposed him, and, with such knowledge and appreciation, continued in the service. *Gordon v. Chicago, R. I. & P. R. Co.*, 146 Iowa 588. We think that *Kirchoff v. Creamery Supply Co.*, 148 Iowa 508, tends strongly to sustain the right of appellant to have assumption go to the jury; and that some support for that position is given by *Lunde v. Cudahy*, 139 Iowa 688, at 697. *Johnson v. St. Paul, M. & M. R. Co.*, 43 Minn. 53 (44 N. W. 884), *Tibbitts v. Railway*, 138 Iowa 178, and *Rickerd v. Chicago, St. P., M. & O. R. Co.*, 141 Fed. 905, come as near to having the same facts as one may expect to find; and in all of them, assumption of risk was held to be for the jury.

Placing the post in dangerous proximity to the track constituted negligence. *Galveston, H. & S. A. R. Co. v. Brown,* 33 Tex. Civ. App. 589 (77 S. W. 832); *Kearns v. Chicago, M. & St. P. R. Co.,* 66 Iowa 599; *Murphy v. Wabash R. Co.,* 115 Mo. 111 (21 S. W. 862); *Hall v. Union Pac. R. Co.,* 16 Fed. 744. It constituted negligence to permit the track to remain in an uneven, rough, and unballasted condition, thus causing cars to roll back and forth, and to create a tendency to have them jump the track. *Gordon v. Chicago, R. I. & P. R. Co.,* 146 Iowa 588. This being so, it follows, as matter of elementary law, that, at worst, assumption of risk was for the jury, because the employee does not assume the risks created by the negligence of the master. Assumption of risk was, at worst, for the jury, because a fireman was not bound to keep a lookout to ascertain whether the company had performed its duty to provide a safe place to work. It has been so held as to ascertaining the dangerous proximity of a post. See *Galveston, H. & S. A. R. Co. v. Brown,* 33 Tex. Civ. App. 589 (77 S. W. 832); *Gulf, C. & S. F. R. Co. v. Moore,* 28 Tex. Civ. App. 603 (68 S. W. 559, at 561); and *Galveston, H. & S. A. R. Co. v. Mortson,* 31 Tex. Civ. App. 142 (71 S. W. 770). We see nothing in *Texas M. R. R. Co. v. Taylor,* (Tex.) 53 S. W. 362, that aids appellant, and find no applicability to anything at issue here in *Louisville & N. R. Co. v. Parker's Admr.,* 165 Ky. 658 (177 S. W. 465). We are of opinion that the circumstances held to sustain submission to a jury that were found present in *Thornton v. Seaboard Air Line R. Co.,* 98 S. C. 348 (82 S. E. 433), *Gordon v. Chicago, R. I. & P. R. Co.,* 146 Iowa 588, and *Choctaw, O. & G. R. Co. v. McDade,* 24 Sup. Ct. Rep. 24, are not stronger than those found in this record.

Can it be said decedent assumed the risk of being thrown against the post which defendant had placed too near the track? If so, then, though it were conceded that some wrong of the defendant had thrown decedent from the

train, there could be no recovery if being thrown brought his head in violent contact with the land on which the right of way lay. For if knowing the post was where it was would bar a recovery, so would knowledge that ground was lying there against which the head of one thrown from a train might be driven. Appellee bases its claim that all risks involved were assumed on no more than the argument that, if decedent was thrown from the train because of the rough condition of the roadbed, and if, upon being thus thrown, he came to his death by striking a post placed by the defendant in too close proximity to the track, this constitutes an assumption of these risks which defeats recovery, because decedent knew the roadbed was rough and uneven, and knew, as well as defendant, that a post was placed in such proximity, if one was placed there. We do not have to decide whether this claim must go to a jury, but do decide that it was not for the court to rule that assumption of risk defeats recovery, here.

We are of opinion the cause must be remanded for trial by jury.—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.