R. O. WOODARD, Administrator, et al., Appellees, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**NEGLIGENCE:    Proximate Cause—Balancing of Fair Probabilities.**
1    *Direct* proof that an accident was caused by specified negligence is not indispensable. A jury question is made whenever the facts and circumstances are such that honest minds, seeking for the truth, and balancing fair probabilities, may reasonably conclude that said negligence did cause said accident. So held where the question was whether the instantly fatal fall of an employee from a hand car was because of the unguarded condition of the car, its negligent speed, and the dilapidated condition of the track and roadbed. .

**NEGLIGENCE:    Assumption of Risk—Federal Employers' Liability**
2    **Act.** The Federal Employers' Liability Act does not require the employee to assume the risk attending the negligence of the employer.

**TRIAL:    Special Interrogatories.** Special interrogatories which call for
3    nondeterminative facts may be refused.

**COSTS:    Witness Fees—Excessive Taxation of Mileage.** The taxable
4    mileage of a witness is confined to the actual distance traveled *in this state.*

*Appeal from Fayette District Court.*—W. J. SPRINGER, Judge.

DECEMBER 15, 1921.

REHEARING DENIED MARCH 17, 1922.

ACTION in the name of the administrator of the estate of Lester Boleyn, deceased, under the Federal Employers' Liability Act, for damages. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*J. G. Gamble, R. L. Read,* and *H. P. Hancock,* for appellant.

*James D. Cooney* and *E. H. Estey,* for appellee.

STEVENS, J.—I. This is an action in the name of the administrator of the estate of Lester E. Boleyn, deceased, under

the Federal Employers' Liability Act, to recover damages on account of his death, which occurred while he was employed by appellant as a section hand. Boleyn was thrown, or fell, from a hand car on which he was riding, receiving injuries from which he died a few hours later.   At the time of the accident, he and Mike Yenney, appellant's section foreman, were going from Brainerd, a station on appellant's line of railway in Fayette County, to Elgin in the same county.   The accident occurred on June 28, 1916, eight days after he was employed by the appellant.   The hand car on which Boleyn and Yenney were riding was originally an ordinary hand car, operated by hand; but, about two years before the accident, the section foreman had reconstructed it, so that, at the time of the accident, it was propelled by a gasoline motor.   The motor was attached to the floor of the hand car, and was covered by a box which extended the full length of the car, being flush with the floor at both ends.   The box or covering of the motor was about two feet high and two feet wide.   It was about five feet in length. The top was flat, and covered with boards.   There was a lever by which the movement of the car was controlled, extending through and above the floor on the top of the box for several inches.   This lever was near the front end of the car.   There was a floor space on the left side of the box, of about 9 inches, and on the right side, of from 16 to 18 inches.   The car was not equipped with handholds or foot braces of any kind.   The floor space on either side of the box was used as a place for tools, which were laid loosely thereon when the car was being moved along the track.

At the time of the accident, Boleyn was sitting on the top of the box on the left side near the front end of the car, facing forward, and the section foreman on the right side, perhaps somewhat nearer the center of the car.   The foreman manipulated and controlled the lever, which extended above the top or floor of the box on which he and Boleyn were sitting at the time of the accident.   This afforded a device for him to hold to while the car was in operation.

The negligence alleged in plaintiff's petition, in substance, was that the hand car was defective and unsafe, because it was

<span style="margin">1. Negligence: proximate cause: balancing of fair probabilities.</span>

old and worn and its wheels were worn and flat; because it was not equipped with sideboards, handholds, or other means of preventing appellant's employees from being thrown therefrom; that the defendant's roadbed, in the vicinity of and at the place of the accident, was defective, in that it was without sufficient ballast; that the ties were worn, uneven, old, and rotten, and sagged and gave way when the car passed over them; that the rails were not securely or closely spiked or joined; that the car, in passing over same, jerked, jumped, and swayed; that the hand car was not designed or constructed to be operated by a gasoline motor; that, at the time of the accident, it was being operated at an excessive and dangerous rate of speed; that the defendant wholly failed and neglected to repair and maintain a reasonably safe roadbed and track for the safe movement of the hand car; that, at the time of the accident, there were a large number of tools piled upon the floor of the car, among which was a crowbar; that in some way the crowbar fell from the front end of the hand car, becoming so engaged that the heavy and sharp end passed over a number of ties in such a manner as to cut deeply into the same, thereby jerking or impeding the movement of the car, while passing over the defective and unsafe roadbed and track, and causing Boleyn to be thrown violently forward upon the ties, in such a way as to inflict the fatal injuries.

The defendant, for answer, in addition to a general denial, set up that deceased assumed the risk and hazard incident to the movement and operation of the hand car over defendant's tracks; that whatever defect there was in the hand car was open and obvious; and that the deceased fully understood and appreciated the danger incident thereto, or, as a man of mature years, should have known and appreciated the risk; and that the proximate cause of his injuries was his contributory negligence.

The evidence showed that Boleyn was employed by appellant's section foreman at Elgin on June 20, 1916; that he and Yenney, section foreman, left Elgin about 7 o'clock in the morning of June 28th, to go on the hand car to Brainerd, a station at the west end of the section; that they left Brainerd on the return trip about 3:45 in the afternoon; and that, when they

reached a point about two and one-third miles east of Brainerd, Boleyn fell, or was thrown, from. the hand car with his face forward, so that his body fell on the ties between and parallel with the tracks, the hand car passing over his body, and being stopped about 90 feet from the place of the accident.   The section foreman was the only witness to the accident, and he testified that he was sitting on the right-hand side of the car, facing east, slightly forward of the center of the box, and that Boleyn was sitting on the left side of the car, slightly forward of him, also facing east.   He testified that a freight train was due from the west; that he was trying to beat it to Elgin; that he turned his face to the right and toward the rear of the hand car, for the purpose of observing whether the freight train was approaching; and that, just as he looked around toward the front of the car, he saw Boleyn in the act of falling to the ground between the rails.   He further testified that deceased made no outcry, and appeared to make no effort with his hands to prevent the fall.   Boleyn was rendered unconscious, and died without regaining consciousness.

The exact speed of the car is not shown; but it appears from the testimony of a farmer, who saw it shortly before the accident, that it was perhaps from 15 to 20 miles per hour. The section foreman further testified that the car did not jerk, jump, or make any unusual movement that he noticed, immediately before Boleyn fell.   Five or six days after the accident, several parties went to the scene of the accident, for the purpose of examining the ties, roadbed, and the track.   They testified that some of the ties were decayed—one badly; that the spikes did not grip the rails; that there was practically no dirt between the ties; and that there were marks on the top of a number of ties near the track on the left side, facing east.   The marks on the ties were prominent, and it was demonstrated that the sharp end of the crowbar fitted into them in such a way as to induce the belief that they were caused thereby.   There was a round rod or brace on each side of the front end of the hand car, one end of which was attached to the frame near the front wheel, and the other to handholds, which extended a few inches forward of the frame near the center of the car, leaving a space between the rod and the car.   The rod on the left side was bent

sharply toward the frame, and there was an indentation on the under side of the frame of the car. The hand car was placed in position so that the crowbar fitted into the marks on the top of the ties, and it was found that it also fitted into the indentation on the frame and the brace. From this demonstration, it is argued that the crowbar must have slipped from the floor of the car, and must have become engaged in such a way as to produce the marks on the ties.

Counsel for both sides place much stress, in argument, upon the possible situation and effect produced by the crowbar. Yenney testified positively that no crowbar was on the hand car that day; that he left it a mile and a half "the other side of Elgin." He also testified that he ordinarily carried a crowbar. It is difficult to conceive how the crowbar could have been engaged or held in a position to make the marks on the top of the ties, and at the same time cause the indentation in the frame of the car. The end of the crowbar did not pass between the brace or rod in front of the hand car, because the bend in the rod was toward the frame and upward. Manifestly, the rod would have been bent outward and downward, if the crowbar had become thus engaged. The only suggestion made by counsel as to how the crowbar could have passed over the ties in the manner claimed is that Boleyn saw it in the act of falling from the floor of the hand car, caught hold of it, and held it in such a position as to produce the result stated. There is nothing in the record to indicate that this occurred. It is mere conjecture, and quite inconsistent with the reasonable facts. The peculiar relation of the marks upon the ties to the indentation upon the frame and the bent rod is, of course, not explained. The fitting of the end of the crowbar into the marks and the indentation upon the frame tend, of course, to indicate a possible connection between them; but the improbability of the crowbar's becoming so entangled as to be held by deceased is too great to justify the reasonable inference that the accident was caused in that manner.

The argument of counsel for appellant proceeds upon the theory that plaintiff's cause of action rested primarily, if not solely, upon the facts relating to the crowbar. It is true that counsel for appellee gives much emphasis and prominence in

argument to the marks upon the ties and the result of the demonstration shown; but, as previously stated, it is also alleged in the petition that the hand car was defective, in that it was not equipped with handholds, foot braces, or other devices by the use of which the deceased could have prevented himself from being thrown from the car; that it was old; that there was a play of an inch and a half between the flanges of the hind wheels and the rails, thereby increasing the danger of the car's swaying; and that the track and roadbed were in such a defective and dangerous condition as to make the operation of the hand car thereover at a high rate of speed dangerous.

By act of Congress approved April 22, 1908 (U. S. Comp. Stat., Section 8657), it is provided:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

It is conceded in the evidence that the hand car was not equipped with handholds, foot braces, or other devices for the use and protection of appellant's employees; also that, since the accident in question, handholds have been placed at each end of the box over the motor, and that sideboards have been placed on the floor, and a foot brace across the front end of the car. The latter was offered in explanation of photographs received in evidence. The section foreman testified that there was no unusual swaying, jerking, jumping, or other movement

of the hand car on the day in question at the time, or before, Boleyn was injured. So far as disclosed by the record, deceased had not, before he was employed by appellant on June 20th, worked on the section, and the section foreman testified that he had passed over the track at the point of the accident but once, which was on the trip to Brainerd on the day in question. He further testified that they stopped and worked at different places between Elgin and Brainerd, and that, on the return trip, they were running ahead of a freight train, which he was trying to beat to Elgin. Two witnesses testified that, six or eight days after the accident, they rode on the hand car with the section foreman over the track where the accident occurred, at a speed of about 12 miles per hour, and that the car jerked, jumped, swayed, and moved up and down, and that same was caused by the unevenness and insecurity of the roadbed, ties, and rails. The section foreman who rode with them contradicted the testimony of these witnesses.

It is vigorously argued by counsel for appellant that the evidence wholly fails to show any causal connection between the fatal injuries received by Boleyn and the alleged negligence of the appellant; that the evidence is all circumstantial, and does not exclude the reasonable hypothesis that the accident may have been due to other causes than the alleged negligence of appellant. The rule is well settled in this state that plaintiff cannot recover where the facts go no further than to establish a possibility that defendant's negligence was the proximate cause of the injury. A causal connection must be shown. *O'Connor v. Chicago, R. I. & P. R. Co.,* 129 Iowa 636; *Haller v. Quaker Oats Co.,* 181 Iowa 389; *Lunde v. Cudahy Pkg. Co.,* 139 Iowa 688; *Canfield v. Chicago, R. I. & P. R. Co.,* 142 Iowa 658; *Wheelan v. Chicago, M. & St. P. R. Co.,* 85 Iowa 167. But it is not incumbent upon the plaintiff to prove either the negligence or proximate cause beyond a reasonable doubt. *Lunde v. Cudahy Pkg. Co.,* 139 Iowa 688. When facts are proven which show a cause which might produce an accident in a particular way, and an accident happens in that manner, it is a warrantable presumption, in the absence of some showing to the contrary, that the known cause was the one that produced the result. *Brownfield v. Chicago, R. I. & P. R. Co.,* 107

Iowa 254; *Degelau v. Wight*, 114 Iowa 52; *Lehman v. Minneapolis & St. L. R. Co.*, 153 Iowa 118; *Bonjour v. Iowa Tel. Co.*, 176 Iowa 63; *George v. Iowa & S. W. R. Co.*, 183 Iowa 994.

In this connection, it is further argued on behalf of appellant that, even though it is shown by the evidence that one or more ties were rotten, and that the track and roadbed were uneven, insecure, and otherwise defective at the place of the accident, six or eight days thereafter, it cannot be presumed that such was its condition at the time of the accident, especially in view of the positive testimony of the section foreman that the car did not jerk, jump, or sway at the time of or before the occurrence.

It is well known that ties do not become decayed and rotten in six or eight days, and the proof as to the condition of the track at the time of the accident does not rest solely upon presumption. A farmer who walked over the track a few days before the accident testified that he observed the decayed tie, that the track was uneven, and that the spikes did not grip the rails tightly; and the section foreman testified that there had been no change in the track between the time of the accident and the visit of the several witnesses to the scene thereof. As bearing upon the condition of the track at the time of the accident, Charles D. Carr, appellant's roadmaster, testified that the daily train movement over that line of appellant's railway was four daily passenger trains and two regular freight trains, and that there were also extra trains and work trains hauling gravel; that the engines used in operating passenger trains were 55-ton engines, and that these trains consisted of a baggage car, smoker, and ladies' coach; that the scheduled speed was 20 miles per hour, which would make the actual running speed between the stations about 28 or 30 miles an hour; that some of the locomotives used by appellant on this line of its railway weighed from 66 to 76 tons. He further testified that the play between the wheels and rail of a hand car should be one and one-quarter inch, and the section foreman also testified that this was necessary, in order that the car might be lifted from the track. The witness further testified that there was nothing to indicate that the track or roadbed was defective, or that it required more than ordinary repair. He did, however, testify, upon cross-examina-

tion, that heavier rails, more ballast, and some new ties were required, but without designating the place of the accident as one needing repair.

Much reliance is placed by counsel for appellant on *O'Connor v. Chicago, R. I. & P. R. Co.* and other cases cited supra. In these cases the court held that there was nothing to show a causal connection between the accident and the negligence alleged. The evidence was wholly circumstantial, and it was held that the circumstances were as consistent with the defendant's theory that its negligence had nothing to do with the accident as that it was the proximate cause thereof. The cases are distinguishable on the facts from the case at bar. Two witnesses testified upon the trial below that, when they rode on the hand car over the track where the accident occurred, it jumped, jerked, and swayed, and that the track gave way under it. To what extent a hand car weighing 750 pounds, the weight of the car in question, would jump, sway, or jerk when propelled by a gasoline motor at 15 or 20 miles an hour over a track in a reasonably safe condition, is not shown; but it may be assumed that its movement would, to some extent, show these effects; but it was for the jury to say whether the track and roadbed were in an unsafe condition, and whether same was due to negligence upon the part of appellant. Deceased, so far as disclosed by the record, was inexperienced, and had not previously worked as a section hand. The section foreman, as already stated, testified that he was attempting to beat a freight train to Elgin, and the jury may have inferred that the car was moving at a rapid rate of speed. The absence of handholds, foot braces, or some other device by the use of which appellant's employee could prevent himself from being thrown from the car, is significant on the question of negligence. It may be that plaintiff did not make out a strong case; but it seems to us that the court could not, as a matter of law, properly hold that appellant was not negligent in all of the respects charged, and that no causal connection between the appellant's negligence and the accident was shown. We said, in *Lunde v. Cudahy Pkg. Co.*, supra:

"Proximate cause is, under all ordinary circumstances, a question of fact; and, where it depends upon circumstances from

which different minds might reasonably draw different con-
clusions, or where all the known facts point to the negligence
of the defendant as the cause, the submission of the question to
the jury affords no ground for assignment of error by such
defendant.''

Honest minds, seeking for the truth, might reasonably dif-
fer as to whether the injuries were the result of appellant's neg-
ligence, or whether they were produced by some other cause.
The situation disclosed by the record is more analogous to the
situation described in *George v. Iowa & S. W. R. Co.*, 183 Iowa
994. In that case, the fireman fell from the engine between sta-
tions, which accident was not discovered until later. No one
saw him fall, nor was there any direct proof as to the cause
thereof. The evidence, however, showed that the track and
roadbed were uneven, and so constructed that the train, while
passing over it, swayed more or less violently, and in such a
manner as that he might have been thrown against a post on the
right of way and killed. We held in that case that:

''It constituted negligence [for the appellant] to permit
the track to remain in an uneven, rough, and unballasted con-
dition, thus causing cars to roll back and forth, and to create a
tendency to have them jump the track.''

See, also, *Gordon v. Chicago, R. I. & P. R. Co.*, 146 Iowa
588. We further said:

''Undoubtedly, it does not suffice where a conclusion which
is consistent with the theory of the plaintiff is, as a matter of
law, equally consistent with some other theory. *Wheelan v.
Chicago, M. & St. P. R. Co.*, 85 Iowa 167. But, as said in *Lunde
v. Cudahy Pkg. Co.*, 139 Iowa 688, at 697, this does not require
plaintiff to prove either negligence or proximate cause, beyond
a reasonable doubt; and, where the proven circumstances are
such that different minds may reasonably draw different con-
clusions, or where all the known facts point to the negligence
of the defendant as the cause, then, though the evidence be
wholly circumstantial, proximate cause is for a jury. It suffices
that inferences which plaintiff demands may fairly be drawn.
*Kansas City So. R. Co. v. Leslie*, 112 Ark. 305 (167 S. W. 83,
89), approving *St. Louis, I. M. & S. R. Co. v. Hempfling*, 107
Ark. 476 (156 S. W. 171). The true test is well stated in

*Schoepper v. Hancock Chemical Co.*, 113 Mich. 582 (71 N. W. 1081), wherein it is said that the rule where the case rests wholly in conjecture does not apply, if there is room for balancing the probabilities and for drawing reasonable inferences better supported on one side than the other, even though the evidence for the theory of plaintiff is rebutted, but without disclosing any other probable cause.''

Some evidence was introduced from which it appears that Boleyn had at one time been afflicted with a stomach trouble, and that he occasionally had attacks of dizziness. It is argued by counsel for appellant that it is as probable that he was seized with an attack of dizziness and fell from the car, as that the negligence of the defendant was the proximate cause of his injuries. We are unable to concur in this view. There was no evidence that he was at the time suffering from stomach trouble or dizziness, except, possibly, a mere inference to be drawn from the statements of Yenney that he apparently made no effort to catch himself, and did not extend his hands in front of him. The physician who attended him testified that his skull was fractured, and that he died of traumatic meningitis. It is our conclusion, and we hold, that, notwithstanding the fact that the record fails to show direct proof of a causal connection between the accident and the negligence charged, the proven facts and circumstances are such as to justify a reasonable inference that the negligence of the appellant was the proximate cause of the injury. This is all that the law requires. Under the Federal statute quoted supra, the question was for the jury.

II. The appellant, at the conclusion of all the testimony, moved for a directed verdict, upon the ground, among others, that the defense of assumption of risk was conclusively established. The overruling of this motion was followed by a request for an instruction upon this issue. The requested instruction was refused, but the court submitted the issue to the jury in the seventh paragraph of its charge. Appellant excepted to the instruction given, upon the ground that it advised the jury that deceased did not assume any risk which was brought about or caused by the negligence or carelessness of the defendant. The injuries from which Boleyn died were not due to causes which

2. NEGLIGENCE: assumption of risk: Federal Employers' Liability Act.

violated the Federal statute enacted to insure the safety of employees, and the defense of assumption of risk was available to appellant. The Supreme Court of the United States has repeatedly held that it is the duty of the trial court to submit the case to the jury unless a recovery is impossible upon any view that can properly be taken of the facts which the evidence tends to establish, or unless the evidence is of such a character that ordinary minds would not differ as to the proper conclusion to be reached. Richey on Federal Employers' Liability (2d Ed.) 186; *McGovern v. Philadelphia & R. R. Co.*, 235 U. S. 389 (59 L. Ed. 283); *Kane v. Northern Cent. R. Co.*, 128 U. S. 91 (32 L. Ed. 339). The instruction given by the court is somewhat similar to the one under consideration by the Supreme Court in *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S. 18 (64 L. Ed. 430), which was criticized, but held to have been without error. See, also, *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441 (62 L. Ed. 385). The instruction taken as a whole is not objectionable. *George v. Iowa & S. W. R. Co.*, supra; *Gordon v. Chicago, R. I. & P. R. Co.*, 146 Iowa 588. The risks assumed by plaintiff's intestate were fairly and fully stated. We think the instruction without prejudice.

III. Appellant asked the court to submit the following special interrogatories:

"1. Was there a crowbar on the hand car, prior to the time that Lester Boleyn fell or was caused to fall from said hand car?

3. TRIAL: special interrogatories.        "2. Did a crowbar fall or slide from said hand car, strike Lester Boleyn, or the car, or both, and cause him to fall from said car?"

The request was refused. This ruling by the court upon this point does not present a ground for reversal. To constitute error in the refusal of the court to submit requested interrogatories, it must appear that the answer of the jury thereto would be decisive of the case, or of some claim involved therein. *King v. Chicago, R. I. & P. R. Co.*, 185 Iowa 1227. It is clearly manifest from what has already been said that an answer to the requested interrogatories favorable to appellant would not have been decisive of any issue involved upon the trial.

IV. Gertrude Kryloff, the surviving widow of Lester Bo-

leyn, attended the trial at the request of the plaintiff, traveling from Los Angeles, California, to West Union, a distance of 2,095 miles. She was a material witness for appellee. She was allowed mileage fees for the entire distance, in the sum of $223.50. This was error. Mileage could be properly taxed only for the distance traveled within this state. *In re Estate of Hulme*, 185 Iowa 1219. The judgment below should be modified so ·as to allow mileage for this witness only from the state line, and for the distance necessarily traveled in this state to attend the trial. This may be done by motion to retax costs.

<div style="margin-left:2em">4. COSTS: witness fees: excessive taxation of mileage.</div>

V.   Other matters, such as the refusal of the court to give requested instructions, the failure to properly state the issues to the jury, and several of the paragraphs of the court's charge, are complained of.   These alleged errors are either without merit or not urged in argument. We have, however, carefully examined the record bearing thereon, and are satisfied that no prejudicial error was committed by the court as to these matters. The judgment of the court below is, therefore,—*Affirmed*.

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.