# MURPHY v. THE WABASH RAILROAD COMPANY, *Appellant.*

## Division One, March 25, 1893.

1. **Negligence:** RAILROAD: STRUCTURES NEAR THE TRACK: SERVANTS. A railway company is required to place its signal posts, cattle-guard fences and other structures used in connection with the road at a safe distance from the track to the end that they will not be dangerous to its employes in operating the trains.

2. ———: ———: ———: ———. Where the company has itself placed such structures so near the track as to be dangerous to its servants in the discharge of the duties assigned to them and an injury occurs from that cause without fault on the part of the servant injured, the liability of the company is fixed.

3. ———: ———: ———: QUESTION OF LAW AND FACT. The rule as to when such structures, so placed in dangerous proximity to the track, constitute negligence as a matter of law and fact, stated.

4. ———: ———: ENGINEER, SCOPE OF DUTY OF. The question whether an engineer who observes water running out of the tank of his locomotive, is in the line of his duty in taking a position on the outside of his cab without stopping the train for the purpose of correcting the defect in the machinery is one for the jury, where there is evidence that other engineers were accustomed to act in the same way.

5. ———: ———: ———. The engineer was not as a matter of law guilty of contributory negligence in failing to stop the train and correct the defect when it appears he did not know how close the fence by which he was struck and injured was to the passing train.

6. ———: ———: ———: ASSUMPTION OF RISKS. An engineer having no knowledge of the proximity of the fence to the track does not assume the risk arising therefrom; it being one resulting from the nonperformance of a duty which the law devolves upon the company.

7. ———: ———: CONTRIBUTORY NEGLIGENCE: EVIDENCE. On the question whether the engineer was guilty of contributory negligence in not taking care of himself and in unnecessarily exposing himself to danger of injury while operating the engine, it is competent to show that he knew that another train was running in the same direction three quarters of a mile behind him, and that he was expected to meet a third train at a station five or six miles away.

*Appeal from Randolph Circuit Court.*—HON. J. A. HOCKADAY, Judge.

AFFIRMED.

*F. W. Lehmann* and *G. S. Grover* for appellant.

(1) There was no proof of negligence on the part of defendant. Wood's Master & Servant, sec. 329; *Burke v. Withrow*, 98 N. Y. 565; *Railroad v. Lonergan*, 118 Ill. 48; *Bowen v. Railroad*, 95 Mo. 268; *Bohn v. Railroad*, 106 Mo. 429; *Railroad v. Stewart*, 13 Lea (Tenn.), 432; *Smith v. Railroad*, 69 Mo. 32; *Railroad v. Coleman*, 28 Mich. 440; *Railroad v. Judson*, 34 Mich. 506; *Clark v. Railroad*, Scotch Sess. Cases [4 Series] 273; *Pequigno v. Railroad*, 12 Am. & Eng. Railroad Cases, 210; *Sjogren v. Hall*, 53 Mich. 274; *City v. Zimmerman*, 95 Pa. St. 287; *Crafter v. Railroad*, L. R. 1 C. P. 300; *Morris v. Railroad*, 9 Cent. Rep. 288. (2) The evidence shows affirmatively that the accident was due to the plaintiff's own negligence in unnecessarily exposing himslf to peril. *McKee v. Railroad*, 50 N. W. Rep. 209. (3) The plaintiff assumed the risk of injury when he proceeded to tighten the coupling in the manner he did. *Hulett v. Railroad*, 67 Mo. 239; *Rains v. Railroad*, 71 Mo. 164. (4) The court erred in admitting testimony of the movements of the other sections of the plaintiff's train.

*Alexander H. Waller* for respondent.

(1) Respondent was entitled to a safe and unobstructed track, and appellant owed him this duty; and to this end appellant was bound to place its fences and other structures used in connection with its road at a reasonably safe distance from the track so as not to be

dangerous to respondent or to any of its employes operating its trains whilst discharging any of their duties, and a failure to do so is negligence. *Somers v. Railroad*, 9 S. W. Rep. (Tex.) 741; *Johnson v. Railroad*, 41 Am. & Eng. Railroad Cases (Minn.), 293; *Hall v. Railroad*, 16 Fed. Rep. 744; *Railroad v. Russell*, 91 Ill. 300; *Railroad v. Davis*, 9 South. Rep. (Ga.) 252; *Stackman v. Railroad*, 80 Wis. 428; *Babcock v. Railroad*, 23 N. E. Rep. (Mass) 325; *Railroad v. Johnson*, 31 Ill. App. 185; *Nugent v. Railroad*, 38 Am. & Eng. Railroad Cases (Me.), 53; *Scanlan v. Railroad*, 38 Am. & Eng. Railroad Cases (Mass.), 48; *Pidcock v. Railroad*, 19 Pac. Rep. 191; *Railroad v. Oram*, 49 Texas, 341; *Railroad v. Wright*, 16 N. E. Rep. (Ind.) 145; *Hall v. Railroad*, 6 South. Rep. (Ala.) 277; *Railroad v. Irwin*, 16 Pac. Rep. (Kan.) 146; *Gregg v. Railroad*, 52 N. W. Rep. (Mich.) 63.    (2) Respondent had no actual knowledge that said fence was dangerously near to the track, and he was not bound to ascertain for himself. He had the right to assume that appellant would do its duty, and that it would not subject him, while discharging his duties, to such extraneous peril. *Gutridge v. Railroad*, 105 Mo. 526; *Devlin v. Railroad*, 87 Mo. 545; *Waldhier v. Railroad*, 87 Mo. 37.    (3) Engineers, brakemen and other trainmen will not be presumed to have notice respecting fences merely because they run over the road. Besides, the fence had been standing three years, and this was respondent's third trip over that part of the road, in daylight, in four years. *Magee v. Railroad*, 21 Pac. Rep. (Cal.) 114.    (4) Negligence is not susceptible of direct proof, but if found must be inferred from the facts and circumstances of the case. The facts and circumstances in this case fully support the averments of the petition, and, from these facts and circumstances, the jury inferred and found that appellant was

negligent with respect to this fence; and in this case, negligence was a proper question for the jury. *Rine v. Railroad*, 100 Mo. 234; *Soeder v. Railroad*, 100 Mo. 673; *Tabler v. Railroad*, 93 Mo. 85. (5) Respondent cannot be held negligent as a matter of law. He was performing a pressing duty, suddenly called upon to do, and his undertaking was not in itself perilous to a man of his years, build and activity. The question of contributory negligence was properly submitted to the jury. *Barry v. Railroad*, 98 Mo. 70; *Wilkins v. Railroad*, 101 Mo. 106; *Maus v. City of Springfield*, 101 Mo. 618; *Sullivan v. Railroad*, 107 Mo. 76. The question whether the respondent was engaged in the prudent discharge of his duties was submitted to the jury; and the jury having found that he was, the appellate court will not interfere. *Gutridge v. Railroad*, 105 Mo. 529. (6) Respondent, in his undertaking, assumed all the risk incident to and directly resulting from his act, such as losing his hold and falling, being jostled off by the lurching of the train, etc., for these he knew of, and could guard against; but he did not assume the (to him) unknown and unsuspected peril arising from appellant's negligent act in erecting its fence within fifteen or sixteen inches of passing trains. *Dayharsh v. Railroad*, 103 Mo. 576; *Hough v. Railroad*, 100 U. S. 213. (7) The court did not err in admitting testimony with reference to the movements of other sections of the train, or as to meeting trains. All the facts and circumstances tending to elucidate plaintiff's duty and conduct, in view of his situation and surroundings, were necessary to enable the trial court first, and the jury afterward, to determine the question of his alleged contributory negligence. Beach on Contributory Negligence [1 Ed.] sec. 163, p. 159; *Buesching v. Gas Light Co.*, 73 Mo. 219.

BLACK, P. J.—The plaintiff obtained judgment in the circuit court for personal injuries received by him while in the employ of the defendant in the capacity of an engineer. The substantial averments of the petition are, that the defendant negligently erected and maintained a fence on its right of way so close to its track as to imperil the lives and limbs of its servants engaged in operating trains, by reason of all of which he was struck and dragged from his engine.

The errors assigned are:

1. That there was no proof of negligence on the part of the defendant.

2. The evidence shows that the accident was due to the plaintiff's own negligence, and the court should have so declared.

3. The plaintiff assumed the risk of injury when he attempted to tighten the hose coupling.

4. The court should have excluded the evidence as to the movements of the other sections of the same train.

The first and second of these objections render it necessary to state the evidence with some detail: The accident occurred in May, 1890. The plaintiff was a sprightly man, twenty-seven years of age. He had worked for defendant as fireman for three years. After that he worked for another road for two years. He again entered the service of the defendant as a locomotive engineer in January, 1890, and ran an engine from Moberly to points north and west of that place. For two weeks prior to the accident he had been engaged in running an engine from Moberly east to St. Louis and back, and had made two trips over that part of the road in daylight. On the day of the accident he had charge of a heavy engine hauling the first section of a freight train. There were three sections of this train,

two behind him. The plaintiff's section was composed of seventeen loaded and twelve empty cars. The sections all left St. Louis for the west, and they were supposed to keep a mile apart. At the time of the accident the second section was only three-quarters of a mile behind the first, and of this fact plaintiff had knowledge. He was within two or three miles of a station called Wright City, where he expected to pass a train going in the other direction which had the right of way.

At this juncture of affairs he saw water running out of the tank, occasioned as he knew by a loose nut which attached the hose to the water tank on the tender. It was through this hose that the engine boiler received its supply of water. The tank of the tender was built upon a heavy timber frame, and the loose nut was located at the bottom of the tank and within this frame and twenty-two inches from the outside of the tank. Instead of stopping the train to tighten the nut, he got a hammer and took a position outside of the cab and tender. He grasped a hand-hold at the lower part of the front end of the tender with one hand, placed his right foot on a step at and a little below the front end of the tank and his left foot still lower down on the tender truck frame, and then swung his body around against the tank, and in this way was able to feel for and reach the nut with the hammer. He struck it twice and succeeded in tightening it so as to stop the waste of water. At this instant his hip struck a fence, and he was knocked off. Car wheels ran over his left arm so that amputation became necessary.

There was a road-crossing at the place of the accident, and the plaintiff was struck by the east fence on the north side of the track. This fence extended up to a cattle-guard. At the end of the fence there was a slanting upright board. The evidence tends to show

that this board was thirty inches from the rail at the bottom and about forty-eight inches from a perpendicular to the rail at the top, thus leaving a space between the outside of the tender and the board of six or eight inches at the bottom and sixteen or eighteen inches at the top of the fence. A witness who resided near to the place of the accident testified on cross-examination: "*Q.* The fence was, in general form, just such a fence as we have at cattle-guards everywhere? *A.* Yes, I did not measure any cattle-guards at the time of the accident. They all looked about the same, all the cattle-guards along the track being about the same slant and the same nearness to the track. Have been along up and down the track at different points for a few miles each way. It was a pine board fence."

The evidence of the plaintiff is to the further effect that there were two hose connections between the boiler and the water tank; that one of them was out of repair, so that it could not be used; that it was the fastening of the one in use that worked loose; that he had but six or seven inches of water in the tank and it was six miles from a place where he could get a new supply of water; and that it was necessary to stop the waste to save the boiler. He says he had no knowledge as to how close the fences were to the track; that he had no idea they were close enough to hit him; that he looked forward but could see nothing that appeared dangerous; that he was two hundred and fifty yards from the crossing when he stepped down to tighten the nut; that he thinks he sounded the whistle for the road-crossing; that he did not know exactly where the crossing was; that he thought he would do this work before he got to the crossing; that he knew there was a crossing up there some place; and that if he did know where the crossing was he had no idea that the fence was close enough to drag him off.

The defendant called several locomotive engineers who gave evidence to the effect that the proper way to have tightened the nut, under the circumstances, was to whistle out flagmen and stop the train. They had tried the experiment with this engine and say a man could not tighten the nut as plaintiff did and at the same time keep the body up against the tank; that some engineers by reason of their build and short arms could not do it at all in that way. One of them, the defendant's traveling engineer, says some engineers do things that others would not, and do them successfully; that he had tightened nuts when the engine was in motion, and would do it every time without stopping his train, if he could do it safely.

Plaintiff testified in rebuttal that a wide-awake young man would never think of stopping his train between stations to tighten such a nut, that he had tightened nuts in a like place a number of times while the train was in motion; that he tightened this one before on the same day in the same way, and that careful and prudent engineers did the same thing.

1. The first inquiry is, was there evidence of negligence on the part of the defendant? The master is not bound to furnish absolutely safe appliances, for the law does not require that he must foresee and provide against all possible accidents. His duty to his servants is to use ordinary care in that respect. There can be no doubt but it is the duty of a railroad company to use reasonable and ordinary care in constructing and keeping its road in repair, and what is ordinary care depends much upon the dangers to be reasonably apprehended. A railroad company is in duty bound to place its signal posts, telegraph poles, cattle-guard fences and other structures used in connection with the road at a safe distance from the track, to the end that they will not be dangerous to those

engaged in operating its trains; for, considering the nature of the business, this is but ordinary care. It is not sufficient that such structures answer the purpose for which erected. In building them the safety of the servants in operating trains must be consulted. If it becomes necessary to place such structures so near to the track as to be dangerous to such operatives, then it is the duty of the company to warn them of the danger, so they can govern their conduct accordingly.

It is to be further observed at the outset that a structure like a signal-post or fence placed so near to the track as to strike the servants when in the discharge of their duties is necessarily and inherently dangerous. When it is found that the company has itself placed such a structure so near the track as to be dangerous to its servants in the discharge of duties assigned to them, and an injury has occurred from that cause without fault on the part of the servant injured, the liability of the company is fixed. Additional proof is not necessary in such a case. Such a structure may be placed so close to the track that the court can say, as a matter of law, that the placing it there is negligence; and the structure may be at such a distance that the court can and ought to say there is no evidence of negligence; and between the two there is a field wherein the question of negligence on the part of the defendant is one for the jury. The question here is whether this case, as made by the evidence, falls within or without that field; and, as to this issue, the burden of proof is upon the plaintiff.

In determining this question it will not do to say the question is one for a jury simply because an injury has happened; for in constructing the fence and in maintaining it the defendant was not called upon to anticipate or take into consideration every possible accident. It was, however, bound to guard against such acci-

dents as were likely to occur, such as a prudent per-son engaged in a like business would take into account in constructing the fence. "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things." Pollock on Torts, 36. Whether the case was one for a jury comes to this, can reason-able minds in the exercise of a fair judgment say from the evidence that this injury was one likely to occur, and such as a prudent person would, under like cir-cumstances, guard against?

To show that the evidence does not present such a case, we are cited to a number of adjudications, two of which deserve especial notice. The facts in *Railroad v. Locke, Adm'r,* 112 Ind. 404, were in substance these: A telegraph company carried wires across a railroad track at a depot on poles of the usual height. One of these wires was used by the railroad company in its business. The wires had been erected some eight years before the accident. The head of a brakeman six feet three and a half inches in height, standing erect on a car twelve or eighteen inches above the height of ordi-nary cars, came in contact with one of the wires. The wire fell upon the moving car and was carried along. In falling a coil in it caught the deceased, who was at work on a flat car on another track, and he received injuries from which he died. The "tall brakeman" had passed under the wires, standing erect, daily for sixty days without thought of danger. Brakemen passing under the wires and the telegraph repairers had discov-ered no defect, though there was some evidence tend-ing to show that one of the wires had become lower in the center than it was when first put in place, and that

it continued in that position several months before the
accident. The substance of the ruling is, that there
was here a combination of circumstances resulting in
an accident which the defendant was not bound to
anticipate, and that there was no evidence from which
a reasonable inference could fairly arise that the
defendant neglected any precaution which prudent
persons engaged in a like business would have taken.

*McKee v. Railroad*, 50 N. W. Rep. 209, is still
more in point. In that case a brakeman while in the
caboose observed stones thrown from the track under a
car. To ascertain the cause he went forward while the
train was in motion and then down a ladder on the side
of a car. While hanging low on the ladder and look-
ing under the car his head came in contact with a panel
of wing fence at a cattle-guard and he was killed. He
had been in the employ of the company for three years,
and it appeared that all the cattle-guard fences along
the line, some four hundred in number, were con-
structed in the same way. This panel was three feet
and and ten inches from the rail at the bottom and
inclined outward some three inches. It was conceded
by the court that it might be proper for the brakeman
to thus descend the ladder and make the examination,
and that the defendant might have known that such a
combination of circumstances was possible; but it was
held that the accident was so improbable and was due
to causes of such rare occurrence that the defendant
was not required to provide against it. BECK, C. J.,
dissenting, after showing that the jury could find from
the evidence that the brakeman was acting in the dis-
charge of his duty, says, that it was a duty required of
the brakeman at any time or place, and therefore the
danger from the fence should have been anticipated.

In *Johnson v. Railroad*, 41 Am. & Eng. Rail-
road Cases (Minn.), 293, the plaintiff's intestate was

employed as a switchman in defendant's yard where there were a number of tracks. He was in the act of climbing up or down the side ladder of a moving car. A signal post four feet from the rail struck his body. The question of negligence on the part of the defendant in placing the post so near the track was deemed one for the jury.

In *Hall v. Railroad*, 16 Fed. Rep. 744, the plaintiff was a fireman, and in leaning out of the car for the purpose of inspecting a hot box was struck by a telegraph pole which stood within twelve inches of the car, and the question of negligence was held to be one for the jury.

In *Railroad v. Russell*, 91 Ill. 300, a brakeman was knocked from a moving car by a telegraph pole eighteen inches from the car while he was climbing down the side ladder. The accident occurred at a station. The contention that the evidence did not support the verdict was overruled.

In *Railroad v. Davis*, 92 Ala. 300, s. c., 9 South. Rep. 252, the plaintiff, a brakeman, was injured by a stone projecting from the side of a cut while he was on a side ladder of one of the moving cars. The evidence tended to show that the side ladders were used when the train was in motion. In view of this custom it was held that ordinary care required the defendant to so construct and maintain its road-way as to admit of the use of the ladders by the employes with safety. The following cases are to the same general effect: *Pidcock v. Railroad*, 5 Utah, 612; s. c., 19 Pac. Rep. 191; *Scanlon v. Railroad*, 147 Mass. 484; s. c., 38 Am. & Eng. Railroad Cases, 48; *Babcock v. Railroad*, 150 Mass. 467; s. c., 23 N. E. Rep. 325.

There is a material difference between this case and the one cited from the 112 Ind. In that case the telegraph wires were originally placed high enough to

leave abundant room for cars with brakemen standing thereon to pass under them. The wires had been in this position for years. The negligence, if any, was a failure to discover the sag in one of the wires. The defendant could not of course be held liable until it either knew the wire was out of its proper place or ought to have known it by the use of ordinary care. In the case in hand the defendant built and left this fence in the condition in which it was at the time of the accident, and is therefore chargeable with knowledge of its exact position. While the adjudged cases are not all agreed upon the question now in hand, we think the weight of authority, as well as the better reason, supports the proposition that the question of negligence on the part of defendant in this case was one for the jury to determine.

Assuming for the present that it was within the scope of the plaintiff's duties to take a position on the outside of the cab or tender for the purpose of correcting needed defects in the machinery, it is certainly a reasonable and fair deduction to say that prudent persons would take these duties of the plaintiff into account in constructing the cattle-guard fences. The necessity for taking a position on the outside of the cab or tender was as likely to arise while passing through the country as at a station, and it therefore cannot be fairly said that the duty of guarding against such accidents should be confined to stations. It is true the only proof as to the usual method of constructing cattle-guard fences is the evidence of one witness who saw this particular fence and who says he observed the other cattle-guard fences for a few miles either way from this one, and that they were all constructed in the same way and about the same distance from the track. As has been said, a structure placed so near to the track as to interfere with those engaged in operating

trains is necessarily and inherently dangerous, and the fact that other cattle-guards were also dangerous is no excuse.

The difficult question here is whether the plaintiff was in the line of his duty when he took this position on the outside of the cab and tender for the purpose of tightening the nut. It is common information that brakemen climb up or down the ladders often placed on the outside of cars, and this too while the cars are in motion. The evidence as to what engineers do or are expected to do in this respect is meager, it must be conceded. The evidence shows that engines have running boards, but a person on these boards would be inside of the outer line of the cars, and it seems the engine cabs are a little narrower than the coaches. Such evidence does not show that plaintiff was expected to stand on the outside steps of the tender when in motion. But his evidence is to the further effect that it was no unusual thing for engineers to do just what he did in this instance. The evidence of other engineers is to the effect that they would and do tighten nuts which are within their reach, and this, too, while the train is moving.

We think there is evidence from which the jury could find that the plaintiff was within the line of his duty when he placed himself on the outside of the tender. And in our opinion the inference may be fairly drawn from the evidence that this accident was one which a prudent person engaged in a like business would have guarded against in building the fence, and it follows that the question of negligence on the part of the defendant was properly submitted to the jury.

2. The next question is whether the court should as a matter of law have declared the plaintiff guilty of contributory negligence.

There is no dispute over this proposition that it was the duty of the plaintiff to stop the waste of water. He was bound to do this in order to save the engine boiler. There is much evidence to the effect that he could have whistled out flagmen and stopped his train; but because this way was open to him, it does not follow that he was, as a matter of law, guilty of contributory negligence. It does appear that other engineers would not have attempted to tighten the nut as he did, but their evidence also tends to show that they would have pursued some other course, not because of any danger in standing on the outside step of the tender, but because of their build they could not have tightened it except by stopping the train. The plaintiff being a young and active man it cannot be said as a matter of law that he was guilty of negligence in doing as he did. Had he known that this fence was close enough to the rail to strike him, then there would have been no excuse on his part for taking the position that he did just before passing the crossing; but the trial court could not nor can this court say he had such knowledge.

In the first place he had the right to assume that the defendant had performed its duty and had placed the fence at a reasonably safe distance from the track, until he had information to the contrary, for it was no part of his duty to examine the fences to see how close they were to the track. *Devlin v. Railroad*, 87 Mo. 545; *Waldhier v. Railroad*, 87 Mo. 37; *Johnson v. Railroad, supra; Railroad v. Davis, supra.* And in the next place there is an abundance of evidence tending to show that he did not know how close the fence was to the passing cars. The court did not err in submitting the question of negligence on his part to the jury.

3. The contention that the plaintiff in entering the service of the defendant assumed the risk of such acci-

dents as this is equally untenable. There is no doubt but the servant assumes those ordinary risks which are incident to the business which he undertakes to perform, but he does not assume risks arising from the non-performance of duties which the law devolves upon the master. It is clear that the plaintiff did not assume any risk arising from the fact that this fence was too close to the track, unless he knew the fence was close enough to the track to strike his body, and we have seen that this court cannot say that he had such knowledge.

4. It is finally objected that the court erred in refusing to exclude the testimony of the plaintiff so far as it related to the situation of his train and the trains behind him and the one which he expected to meet at the next station. This motion was based upon the ground that the evidence related to a cause of action not stated in the petition and under the pleadings was irrelevant. The answer set up contributory negligence "in not taking proper care of himself and in unnecessarily exposing himself to danger of injury while operating said engine." This issue made it entirely proper to put in evidence the fact that there was a train just behind him and that he expected to meet one at the next station. It was under these circumstances that he was called upon to act, and they constitute proper factors to be considered in determining the question of negligence on his part. It would have been error to have excluded this evidence.

While this case is a close one, still it must be remembered that running an engine is a business beset with many dangers. It is a business which often calls for prompt and immediate action, and the very fact that the business is accompanied with dangers makes it the duty of the company to guard against them; and in the light of the adjudicated cases before cited we hold

that the plaintiff made out a case for the jury.   There is no complaint whatever as to the instructions, and the judgment is therefore affirmed.   All concur.