ROSE M. BROWN, Administratrix of the Estate of ANDREW G. BROWN, Deceased, Respondent v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed April 8, 1919.

1. **MASTER AND SERVANT: Injury to Servant: Railroads: Bluffs Along Right of Way: Insufficient Clearance: Negligence: Question for the Jury.** As to whether or not a railroad company was guilty of negligence in leaving the embankment or bluff along its right of way so close to its tracks that there was a clearance of but twenty or twenty-four inches between the side of the engine tank and the bluffs, by reason of which an engineer inspecting a hot box was knocked off the engine and killed, makes it a question for the jury.

2. **APPELLATE PRACTICE: Trial Practice: Refusal of Trial Court to Direct Verdict: Evidence: Review.** While plaintiff's testimony was directly in conflict with that of defendant's witnesses, as to the question of the customary and usual manner of examining a hot box while the train was in motion, such testimony cannot be considered in determining whether the court properly refused to direct a verdict for the defendant, as plaintiff is entitled to every reasonable inference arising from her own testimony as well as in addition to any evidence which may have been adduced by the defendant which will help to make out plaintiff's case.

3. **MASTER AND SERVANT: Injuries to Servant: Railroads: Safe Place for Trainmen to Work: Bluffs Along Right of Way: Insufficient Clearance: Negligence.** A railroad company is required, the same as any other employer, to use ordinary care to provide a reasonably safe place to work for its employees, considering the character of their work, and is liable for injuries resulting from its failure to use such care, and will not be held to have exercised ordinary care to provide reasonably safe conditions for their employees to do their work when they permit standpipes, telegraph

poles, fences, buildings, and other structures to be maintained so close to their tracks that employees being on the outside of their moving cars or engines, in the performance of their duties, are crushed by them.

4. ———: ———: Engineer Examining Hot Box: Negligence: Contributory Negligence: Question for the Jury. Where the position assumed by a locomotive engineer was the usual and customary position for an engineer to take in examining a hot box on a tender that was being given the water treatment, the question of his contributory negligence was properly submitted to the jury.

5. ———: ———: Negligence: Contributory Negligence: Federal Employer's Liability Act: Damages. Contributory negligence is not a bar to recovery for injuries to a servant, under Acts of Congress of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1916, Sections 8657-8665), but only to diminish the damages awarded by the jury in proportion to the amount of negligence attributable to the injured employee.

6. ———: ———: ———: Assumption of Risk. A locomotive engineer cannot be held to have assumed the risk of injury resulting from the negligent failure of a railroad company to use ordinary care to furnish him a safe place in which to work.

7. ———: ———: Railroads: Bluffs Along Right of Way: Insufficient Clearance: Rules of Railroad Company: Question for the Jury. In an action for damages for the death of a locomotive engineer struck by a bluff near the track, rules of the railroad company to the effect that all employees were notified that there were coal chutes, platforms, and other structures located on the main lines and on sidings, etc., that will not clear a man riding on the side of cars, and that all employees must protect themselves from injury in passing such structures, making no mention of the fact that bluffs anywhere along its lines, were so near the tracks that they would not clear a man riding on the side of a car or engine in the performance of his duty, is not sufficient to warrant a peremptory instruction to the jury to find for the defendant.

8. TRIAL PRACTICE: Evidence: Not Objected to in Chief: Rebuttal: Harmless Error. Where a matter was testified to without objection in chief, the admission of the same testimony on rebuttal over objection will not be held prejudicial error.

9. ———: Remarks of Counsel: Remarks Withdrawn: Not Prejudicial Error. In an action for damages for the death of a locomotive engineer struck by a bluff near the track, statements of counsel to the effect that plaintiff could not afford to call employees of the defendant to testify as witnesses because they would have lost their job if they had, *held* not prejudicial error in view of the statement of counsel for plaintiff that there was no such testimony in the record.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Leo. S. Rassieur*, Judge.

AFFIRMED.

*J. W. Jamison* for appellant.

(1) Plaintiff failed to prove any of the several specifications of negligence. (2) There was no evidence that defendant, in constructing the railroad track close by the bluff, was guilty of negligent construction. The question of proper construction at that point, the physical conditions being considered, was an engineering question. Tuttle v. Milwaukee R. Co., 122 U. S. 189; Potomac F. & P. R. Co. v. Chichester (Supreme Court of Appeals of Va.), 68 S. E. 404; Reese v. Phila. & Reading R. Co., 239 U. S. 463. Plaintiff sued on the theory of liability under the Federal Employers' Liability Act. "It was not the duty of defendant to see that this roundhouse was made equal to the newest and safest of its engine houses, but its duty was discharged when it furnished such a place as was reasonably safe and suitable for the purposes had in view. And as it was not intended or supposed that engineers or hostlers would get upon their engine as they were about to pass through this doorway, no duty requiring them to do so, there would seem to be no evidence that the roundhouse was unsuitable for its purpose. Hogan v. N. Y. Central & H. R. R. Co., 223 Fed. 895; Reese v. Phila. & Reading R. Co., 225 Fed. 518; (Supreme Court of Mo en banc, No. 17, 1917), Morris v. Pryor, 198 S. W. 817. The construction of the house and yards were in accordance with plans of the engineers of the company, and in accordance with a general plan of building freight houses and tracks. A conductor was caught between the door posts of the house and a refrigerator car. Held, that the company was not negligent under the Federal Employers' Liability Act for maintaining a defective place to work where the conductor was familiar with the surroundings and

the manner of performance of service. Miller v. Mich. Cen. R. Co., 152 N. W. 235; Randall v. Baltimore & Ohio R. Co., 109 U. S. 479; Southern Ry. Co. v. Carr, 82 C. C. A. 240; New York, N. H. & H. R. Co. v. Dailey, 102 C. C. A. 660; Missouri & N. A. R. Co. v. Murphy, 153 S. W. 587; Davies v. Chicago, M. & St. P. R. Co., 236 Fed. 728; Sage v. Wyandotte Terminal R. Co., 159 N. W. 139. (3) The proximate cause of Brown's injury was the extraordinary and unusual position in which he placed himself down on the side of the engine, near the ground, as it approached and was passing around the curve of the bluff. He assumed the risk of that situation. (Court of Ap. of Ky., Oct. 31, 1916.) Judd's Adm'x v. Southern Ry. Co., 188 S. W. 881; (Supreme Court of Ind., Mar. 20, 1908.) Chicago & E. R. Co. v. Dinius, 84 N. E. 9; (Circuit Court of Ap., 7th Circuit, Oct. 3, 1916) Davies v. C., M. & St. P. Ry. Co., 236 Fed. 728; Central Vermont Ry. Co. v. Bethune, 124 C. C. A. 528 (Circuit Ct. of Ap., First Circuit, June 20, 1913); Southern Ry. Co. v. Car, 82 C. C. A. 240 (Circuit Court of Ap., 4th Circuit); Boyd v. Harris, 35 Atl. 222; (Supreme Court of Mo., July 2, 1914), Boesel v. Wells Fargo Express Co., 169 S. W. 110. (4) Brown came to his death solely as the result of his own negligence. As engineer he was authorized to select the time, place and conditions under which he would make inspections. He could stop his train for that purpose. Pankey v. Railway Co., 180 Mo. App. 185; Smelser v. M., K. & T. Ry. Co., 272 Mo. 25; Morris v. Pryor, 198 S. W. 817. (5) The court committed error in permitting locomotive engineer Hayes of the Missouri Pacific Railway Company to give his impression of the clearances where that company's line of railroad paralleled the hills and bluffs on the south side of the Missouri River. There was no evidence that the Missouri Pacific clearances were standard. The question of proper construction at the particular place where Brown was injured was an engineering question; the construction there was rendered necessary by physical conditions; it was a proper

construction.  Defendant was not required to try the
issue respecting clearances on the Missouri Pacific
railroad tracks.   (6) Statement by plaintiff's counsel
in his argument to the jury to the effect that plaintiff
could not afford to call employees of defendant to
testify as witnesses, "because they would have lost
their jobs if they had," was unwarranted and highly
prejudicial.  When the court stated there was no such
testimony in the record, the offense was repeated and
emphasized by the following additional remark by
plaintiff's counsel: "There is no such testimony, but
the fact remains, and it is legitimate argument, and
the conduct of Mr. Snell on the stand makes it proper
for me to make that statement."  Cameron v. Cameron,
162 Mo. App. 110; Neff v. Cameron, 213 Mo. 371;
Epstein v. Railway, 197 Mo. 738; Haynes v. Trenton,
108 Mo. 133; Evans v. Trenton, 112 Mo. 402; Beck
v. Railway, 129 Mo. App. 24; Truel v. Railway, 143
Mo. App. 380.   (7) The court committed error in re-
fusing to give defendant's instruction "J" requesting
the court to withdraw from the jury's consideration the
question of defendant's alleged negligence respecting
the alleged insufficiency of the engine, and lack of re-
pairs and attention thereto by defendant.   There was
no evidence to support said allegation.   (8) The court
committed error in refusing defendant's instruction
"M."   The purpose of this instruction was to advise
the jury that if there were sufficient clearances, pro-
viding Brown had remained in his engine cab and
that he volunteered to go outside and hang on to the
side of his engine, whereby he was injured, there could
be no recovery.   (9) The court committed error in re-
fusing to give defendant's instruction "O" the pur-
pose and effect of which was to instruct the jury that
if defendant had no reasonable ground to expect Brown
to go out of his engine and hang on the side of it
while the same was passing the bluff, there could be no
recovery.

*Leahy, Saunders & Barth* for respondent.

(1) Under the Federal Employers' Liability Act, providing that the carrier shall be liable for the death of the employee "resulting in whole or in part from the negligence of any of the officers, agents or. employees of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, engins, appliances, machinery, track, roadbeds, works, boats, wharves or other equipment" (Sec. I, 35 Stat. L. 65), the defendant in this case was liable both because it furnished deceased with a defective engine, and because it did not maintain a proper bluff clearance for its roadbed. Act. of Apl. 22, 1908, Ch. 149, 35 Stat. L. 65, Secs. 1, 3, 4, 6; Mills v. Roberts, 206 S. W. 751; Hinton v. Railroad Co., 206 S. W. 396; Boldt v. Railroad Co., 245 U. S. 441; Crecelius v. Railway Co., 205 S. W. 181; Laughlin v. Kansas City Southern Ry. Co., 205 S. W. 3; Cincinnati, N. O. & T. P. R. Co. v. McGuffey, 252 Fed. 25; Southern Railway Co. v. McGuin, 240 Fed. 649; Cincinnati, N. O. & T. P. R. R. Co. v. Hall, 243 Fed. 72; Illinois Central Ry. Co. v. Norris, 245 Fed. 926; Erie Railroad Co. v. Linnekogel, 248 Fed. 389. (2) Since Brown was killed in the line of his duty while inspecting his engine for a hot box in the ordinary and customary manner, he was not guilty of contributory negligence and he did not assume the risk resulting from the defendant's negligence in failing to comply with the requirements of the Federal Liability Act and in failing to furnish him with an ordinarily safe place in which to work. Authorities supra under Point 1. (3) If Brown was guilty of contributory negligence, that still would be no defense under the act, and the only effect of such negligence would be to diminish the amount of the damages, as provided by section 3 of the act. Louisville, etc., R. R. v. Fleming, 194 Ala. 51, 69 So. 125; Thomas v. Atchison Ry. Co., 101 Kan. 528, 168 Pac. 322; Cross v. C. B. & W. Railroad Co.,

191 Mo. App. 202; Kippenbrock v. Wabash R. R. Co., 270 Mo. 479; Yoakum v. Lusk et al., 193 S. W. 635; Winslow v. M., K. & T. Railroad Co., 192 S. W. 120; Christy v. Wabash R. R. Co., 195 Mo. App. 732. (4) The question of contributory negligence is one for the jury to determine. Smith v. Atlantic Coast Line Railroad, 210 Fed. 761; Sandidge v. Atchison Central Railroad Co. (C. C. A., 9th Cir., 1912). (5) The extent to which contributory negligence will reduce recovery is also one for the jury. Louisville, etc., Railroad v. Fleming, 194 Ala. 51, 69 So. 125; Thomas v. Atchison Railway Co., 101 Kan. 528, 168 Pac. 322. (6) Contributory negligence under the act is a matter of defense, and defendant has the burden of proving it. Carpenter v. Kansas City, etc., Railroad Co., 189 Mo. App. 164; Central Vermont Railroad Co. v. White, 238 U. S. 507, 59 U. S. (L. Ed.) 1433, Ann. Cas. 1916B, 252; Holmberg v. Lake Shore R. R. Co., 188 Mich. 605, 155 N. Y. 504. (7) Assumption of risk under the act is an affirmative defense and the burden of proving it is upon the defendant. Seaboard Air Line Railroad Co. v. Horton, 233 U. S. 492, 58 U. S. (L. Ed.) 1062, Ann. Cas. 1915B, 475 L. R. A. 1915, C. I; Kenyon v. I. C. Railroad Co., 173 Ia. 484, 155 N. W. 810; Phillips v. Union Pac. Railroad Co., 100 Neb. 157, 158 N. W. 966; Ala. Great So. Railroad v. Skotsky, 196 Ala. 25, 71 So. 335; Kanawha, etc., Railroad Co. v. Kerse, 239 U. S. 576, 60 U. S. (L. Ed.), 448. (8) Under section 4 of the act, an employee does not assume risk of which he has no knowledge nor risks arising from unknown defects in engines, machinery or appliances and in no case does the employee assume the risk of the employer's negligence. Winslow v. Mo., etc., Railroad Co., 192 S. W. 121; Ill. Cen. Railroad Co. v. Skinner, 177 Ky. 62, 197 S. W. 552; San Antonia, etc., v. Littleton, 180 S. W. 1194; Cincinnati, etc., Railroad Co. v. Thompson, 236 Fed. I; Central Vermont Railroad Co. v. White, 238 U. S. 507, 59 U. S. (L. Ed.), 1433 Ann. Cas. 1916B 252; Pa., etc., Railroad v. Marland, 239 Fed. I, 192 S. W. 121;

Young v. Lusk, 268 Mo. 625; Cross v. Chicago Railroad Co., 191 Mo. App. 202; Hoskeit v. Lusk, 190 Mo. 431; Hawkins v. St. Louis, etc., Railroad Co., 189 Mo. App. 201; Fish v. Chicago, etc., Railroad Co., 263 Mo. 106; Gila Valley, etc., R. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 U. S. (L. Ed.) 521; Duvall v. Pa., etc., Railroad Co., 43 App. Cas. (D. C.) 395; Cincinnati, etc., R. Co. v. Hall, 243 Fed. 76, 155 C. C. A. 606; Erie Railroad Co. v. Linnekogel, 248 Fed. 389; Chesapeake, etc., Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 U. S. (L. Ed.) 1102; Ill. Cent. Ry. Co. v. Norris, 245 Fed. 926. (9) It is proper to submit to the jury the question of assumption of risk, if there is any evidence on the subject. It is only in the absence of all evidence that the question of assumption of risk became a matter of law for the court. Seaboard Air Line Railroad v. Padgett, 236 U. S. 668, 59 U. S. (L. Ed.) 777; McGovern v. Pa., etc., Railroad, 235 U. S. 389, 59 U. S. (L. Ed.) 283; So. Railway Co. v. Mays, 66 a (4th Cir., 1916), 239 Fed. (10) The State courts are bound by the interpretation of the act placed thereon by the United States Supreme Court. Hardwick v. Railroad Co., March 2, 1914; Blackenbaker v. Frisco Railroad Co., 187 S. W. 840; Mondou v. N. Y., etc., Railroad Co., 223 U. S. 1. (11) One will not be heard to complain of the admission of testimony over his objection, where evidence of the same tenor has been admitted without his objection. Laughlin v. Kansas Southern Ry. Co., 205 S. W. 3. (12) There was no error in refusing some of defendant's instructions, because erroneous. They were in the nature of demurrers to the evidence. Defendant's nine instructions given covered every phase of the defense and were far too favorable to the defendant.

BECKER, J.—This is an action by Rose M. Brown, administratrix of the estate of Andrew G. Brown, deceased, to recover damages from the Missouri, Kansas & Texas Railway Company for the death of the

said Andrew G. Brown, an employee of the defendant company, caused by its alleged negligence.

While in charge of a locomotive engine of the defendant company, and while engaged in drawing a train in interstate commerce, one of the tank boxes on the tender of the locomotive ran hot, and said Brown, while standing on the ladder or steps leading down from the gangway that formed the forepart of the tender, inspecting said tank box, came in contact with the stone projecting from an embankment along the said right-of-way of said railroad and was knocked from his engine, inflicting injuries upon him which resulted in his death. From a verdict in favor of plaintiff in the sum of $2500, defendant appeals.

The grounds of negligence in plaintiff's petition relied on for a recovery are in substance; first, that owing to insufficiency and lack of repair and attention on the part of the defendant, the locomotive developed a condition known as a hot box in one of the journals. Second, that while plaintiff's decedent was making an examination of the hot box he "grasped the handrail of the engine and tender and leaned out in order to enable him to obtain a view of the side of the engine, and while so leaning out he came in contact with a stone projecting from the embankment along the right-of-way of said defendant" throwing him from the engine and so injuring him as to result in his death. Third, that the defendant permitted its right of-way, at the point where plaintiff's decedent was injured, to be left in a dangerous and unsafe condition by reason of the wall or embankment along which the defendant's tracks were laid at this point, being left in such close proximity to the rails as to endanger the life or limb of the servants of the defendant while in the discharge of their duties in the operation of the locomotive and train.

Defendant's answer admitted that Brown met with injuries resulting in his death, while in its employ as an engineer, and while operating a train, and at a time when said train was rapidly moving at about forty or

fifty miles an hour, by the deceased coming in contact with a natural barrier or bluff located parallel to defendant's railway tracks. The answer contained a plea of contributory negligence, and a further answer that the deceased, in the performance of his duties, had passed said barrier and bluffs while operating defendant's locomotive as an engineer in the "day time and night time" for a period of many years next prior to the date of his injuries, and that he was familiar with the location of both defendant's tracks and the bluff or point referred to, and that with such knowledge the deceased was guilty of negligence in placing himself in a position of peril on said ladder, whereby he fully assumed the risks and dangers incident to his position. The answer also sets up the plea that the deceased violated one of the defendant's rules advising employees that there were obstructions on the defendant's right-of-way along its tracks that would not clear a man riding on the side of the car, by which all employees were required to take notice and protect themselves from injuries in passing such obstructions, and that the deceased was injured as a result of the violation of that rule. The reply was conventional.

The essential facts disclosed by the evidence adduced on behalf of the plaintiff may be stated as follows:

The deceased was 52 years old and on November 4, 1914, the day on which he met his injuries which resulted in his death, was earning from $175 to 190 per month. He was the husband of Rose M. Brown, who is the administratrix of his estate. He had been in the employ of the defendant company as an engineer for about fourteen years and for many years prior thereto had worked for the company in other capacities.

On the day in question Brown was making his run from New Franklin to St. Louis, Missouri, a distance of 188 miles, drawing one of defendant's fast passenger trains. The locomotive assigned him for that run was what is known as a ten wheel type engine, weighing one hundred thirty-seven and one-half tons;

has an open cab, and the tank on the tender connected to the engine was 9 feet 7 inches in width, while the gauge between defendant's tracks was 4 feet 8-1/2 inches. The journal box of the front wheel on the left side of the tank, or fireman's side of the engine, had on several occasions prior to the day in question been reported as running hot, and the very day before, this particular tank box having been reported as running hot, was examined and repacked, but during the trip of November 4th, the journal box again ran hot so that the deceased, when he stopped the train at Mc-Baine, connected a rubber hose to a valve in the tank and kept a small stream of water running into the said box. This method of treating a box which is inclined to overheat is referred to by various witnesses as the "Keeley Cure."

There is testimony that Brown kept up the "Keeley Cure" from McBaine up to mile post 115, the point at which he met with his injuries. Brown examined the bor at McBaine, again at North Jefferson, and also at Mokane. The tracks of the defendant company east of Mokane run parallel with the Missouri River and close up to a series of bluffs. Some few minutes after the train had left Mokane, Brown walked from his seat in the cab to the gangway between the engine and tender, stepped down onto the steps leading from the gangway, holding the handrail of the tender in one hand and the handrail of the engine in the other, evidently for the purpose of inspecting the tank box, and while in that position he was struck between the hips and shoulders by a projecting rock in the bluffs and knocked off the engine, meeting with injuries from which he died the following day. This occurred about nine miles east of Mokane and according to the testimony the distance or clearance from the side of the tank to the projecting rock in the bluffs, at the point where Brown was struck, was twenty to twenty-four inches:

One Blackmer, a witness for the plaintiff, testified he was one of the defendant's engineers and had

charge of the engine in question on its trip the previous day, from St. Louis to New Franklin, and that it had been necessary for him to use water on the journal in the same tank box on that trip; that he had reported the box as running hot.

James E. Hayes testified for plaintiff that he was a locomotive engineer for the Missouri Pacific Railway Company; that he had eighteen years' experience as such and that he had been given the assignment of engineer for pulling many of the special trains for his road, and that he was familiar with the rules as to obstructions and clearances in operating railroads; that the clearances on the Missouri Pacific, which paralleled the defendant's road on the other side of the Missouri River for a distance of 85 miles, also running along at the foot of bluffs the same as the defendant's road, were not less than five feet on its main line; that while a hot box was not necesarily dangerous if given proper attention, it is a matter that requires constant watching, and that there was only one way to watch a tank box and that was to get down on the side of the tank steps and look underneath; that the tank on engines of this type protruded out from the frame and the truck box about eighteen or twenty-two inches so that it would be necessary to get down on the steps of the tank in order to look underneath to examine the tank box; that a man making such an inspection would have to squat down, which would project his body out toward the bluffs slightly; that you could see the end of the tank box from the cab of certain engines but it would be impossible to see the entire box; that when the box was running warm and the "Keeley Cure" had been applied, it was necessary to watch it frequently in order to be sure that the water kept flowing; that frequently sediment or rust on the inside of the tank would stop up the valve leading from the tank to the hose and would stop the flow of water, which might result in the journal running red hot and cause serious trouble; that he had frequently himself made an inspection of a hot box in

the same manner on the Missouri Pacific road, running along bluffs, even at forty miles per hour.

W. P. Smith, one of plaintiff's witnesses, testified he was a railroad engineer and had some twenty-two years' experience on the Southern Pacific, Mexican Central, Fort Worth and Rio Grande, Atchison, Topeka and Santa Fe, Baltimore & Ohio and Texas Pacific; that he had examined the engine that had been driven by Brown at the time of the accident; that the tank projected about twenty inches from the truck box; that he had experience with many hot boxes; that the usual method of treatment was to apply the "Keeley Cure;" that a hot box as well as the "Keeley Cure" needed watching all the time; that the only way to watch it would be to get down onto the steps beside the tank and look at it while the engine was running, and that that was the usual and customary method of inspecting a hot box on a passenger engine when the train was in motion. He also testified that more or less scale, moss and other sediment collected in the tank and quite frequently the hose used for the "Keeley Cure" would choke up and if the water was shut off the journal might become tremendously hot and would be liable to break off, causing a wreck; that the safety of the passengers had to be considered, and that the "Keeley Cure" should be looked at every three or four minutes. He further testified that on the roads that he had worked, the clearance would "possibly be from five to seven feet from the side of the cab."

The conductor in charge of the train, C. R. Campbell, testified that he had observed Brown putting some oil on the box at Mokane after he had delivered his orders to him; that he had noticed that the journal in that box had been running warm and that sometimes they "ran a little water on it;" that he had seen Brown, as well as other engineers of the road, working over that box; that he had examined the spot where Brown had been knocked from the engine and found the rock projecting at that point between twenty inches to two feet from the side of the tank of the engine,

and that the rock was about four or five inches from the ground; that where Brown was knocked off the engine there is a curve in the tracks.

Dick Snell testified he was the · fireman on the engine with Brown on the day of the accident; that the box in question was running hot; that at North Jefferson, Brown turned a little water on it, which was kept running up to the time Brown was knocked off the engine; that this box had been running warm for a "trip or two;" that he saw Brown get down off of his seat and cross the deck of the engine and that when he turned his head a minute later he saw Brown standing on the steps of the tank looking towards the tank box; that as he was thus standing on the steps he was knocked off by the projection from the bluffs; that the distance from the point of the bluffs which struck Brown to the outside of the tank was probably twenty inches.

There is also testimony that when Brown stopped the train at the water tank at Mokane, Brown called the attention of the roundhouse foreman to the tank box and that the roundhouse foreman took a packing iron and shoved the packing back and put some oil into the box.

In light of the assignments of error it will not be necessary to set forth defendant's testimony.

## I.

The main point raised by appellant is that the trial court erred in refusing to give defendant's requested peremptory instruction in the nature of a demurrer at the close of the case, it being contended that plaintiff failed to prove negligence on the part of the defendant.

To this we cannot agree. There was plaintiff's witness, Hayes, who was permitted to testify, without objection, that he was familiar with the rules as to projections and clearances in operating railroads and that the clearances on the Missouri Pacific, running

parallel with the defendant's road on the opposite side of the Missouri River, between the bluffs and the side of the engine were not less than five feet. Also the testimony of plaintiff's witnesses, Smith, an engineer of some twenty-two years' experience on such roads as the Southern Pacific, Mexican Central, Fort Worth and Rio Grande, Atchison, Topeka and Santa Fe, Baltimore and Ohio and Texas Pacific, in which we note the following questions and answers: "Are you familiar with clearances on railroads, bluff clearances and other clearances?" A. Well, I have never taken any actual measurements of them. On the roads I have worked on, the clearances would possibly be from five to seven feet." Q. "From what?" A. "From the side of the cab."

That testimony when taken in connection with the further testimony of both Hayes and Smith to the effect that the proper manner of inspecting a truck box that is either running hot or is being given the "Keeley Cure" is for the engineer to get on to the steps, on the forward end of the tender, and look down at the box in the manner that plaintiff's decedent concededly was doing in this case at the time he was knocked off the engine, we take it makes it a question for the jury as to whether or not the defendant was guilty of negligence in leaving the embankment or bluff along its right-of-way at the point in question so close to its tracks that there was a clearance of but twenty to twenty-four inches between the side of the tank and the bluffs. To hold otherwise would be to declare, as a matter of law, that Brown had no right, in the proper exercise of his duties, to examine the hot box in the manner used by him while the train was in motion, which could not be done in light of Hayes' and Smith's testimony. While it is true that plaintiff's testimony on these matters was directly in conflict with that of defendant's witnesses, as to the question of the customary and usual manner of examining a hot box while the train was in motion, such testimony cannot be considered in determining whether the court

properly refused to direct a verdict for the defendant, as plaintiff is entitled to every reasonable inference arising from her own testimony as well as in addition to any evidence which may have been adduced by the defendant which will help make out plaintiff's case. [Hall v. Mfg. C. & C. Co., 260 Mo. 351, 168 S. W. 927; Stauffer v. Met. St. Ry. Co., 243 Mo. l. c. 316, 147 S. W. 1032.]

In light of the testimony, therefore, that hot boxes were of not infrequent occurrence, and·that when a box began to show signs of running hot, it was the usual and customary thing to apply what has been termed the "Keeley Cure" the process by which water is taken from a valve in the tank through a small hose and discharged into the top of the hot box, and that by reason of the danger of the flow of the water through the small tube being stopped because of sediment in the bottom of the tank, it was necessary and due precaution for the safety of the passengers required that the engineer inspect and keep under observation the flow of water into the box, and see to it that it did not stop and thus permit the journal to become superheated and thereby risk the journal breaking and causing a wreck; that the only practical manner for an inspection of a hot box being subjected to the water treatment, is for the engineer to step down on the steps between the tank and the engine and look at the box, and that plaintiff was in the act of inspecting a box that was running hot, which he was subjecting to the "Keeley Cure," when he was knocked off by a projecting rock from a bluff that was but twenty to twenty-four inches in the clear from the side of the tank, when taken together with the further testimony that on other roads in the country the clearances between bluffs and the side of the tank was about five feet, made a case which in our judgment the trial judge properly submitted to the jury.

Defendant company is required, the same as any other employer, to use ordinary care to provide a

reasonably safe place to work for its employees considering the character of their work, and is liable for injuries resulting from its failure to use such care. [Cincinnati N. O. & T. P. Ry. Co. v. Hall, 243 Fed. 76.] And railroad companies will not be held to have exercised ordinary care to provide reasonably safe conditions for their employees to do their work when they permit stand pipes, telegraph poles, fences, buildings and other structures to be maintained so close to their tracks that employees being on the outside of their moving cars or engines, in the performance of their duties, are crushed by them. [Fish v. Ry. Co., 263 Mo. 106, 172 S. W. 340; Ann. Cas. 1916B, 147; George v. Ry. Co., 225 Mo. 364, 125 S. W. 196; Charlton v. Ry. Co., 200 Mo. 413, 98 S. W. 529; Murphy v. Ry. Co., 115 Mo. 111, 21 S. W. 862.]

## II.

Learned counsel for appellant urgently urges the point that Brown met with his injuries because of the "extraordinary and unusual position in which he placed himself down on the side of the engine near the ground as it was approaching and was passing along the curve by the bluffs. He assumed the risk of that situation."

In view of the testimony for plaintiff that this position which Brown assumed was the usual and customary position for an engineer to take in examining a hot box on a tender that was being given the water treatment, the question of plaintiff's contributory negligence was properly submitted to the jury. This being an action under the federal statutes, under Act of Congress of April 22, 1908, C. 149, 35 Stat. 65 (U. S. Com. St. 1916, secs. 8657-8665) contributory negligence is not a bar to recovery for injuries to a servant, but only to diminish the damages awarded by the jury in proportion to the amount of negligence attributable to the injured employee. If Brown met with his injuries, which resulted in his death, by the negligent failure of the

defendant to use ordinary care to furnish him a safe place in which to work, Brown cannot be held to have assumed the risk of injury resulting from such negligence. [Williams v. Pryor (Mo. Sup.), 200 S. W. 53; Fish v. Ry. Co., supra.]

## III.

Defendant's rules which were introduced in evidence to the effect that all employees were notified that there were coal chutes, platforms, and other structures located on the main lines and on sidings; also structures and platforms belonging to private corporations and persons located on industrial sidings and spurs that will not clear a man riding on the side of cars, and that all employees must protect themselves from injury in passing such structures, is not sufficient to warrant a peremptory instruction to the jury in this case to find for the defendant, and we rule that under the facts in this case it was, nevertheless, a question for the jury as to whether or not the defendant was negligent in exercising ordinary care to furnish plaintiff a safe place to work. Furthermore, the rule relied upon by defendant which calls specific attention to certain coal chutes, platforms and other structures makes no mention of the fact that the bluffs anywhere along its line were so near the tracks that they would not clear a man riding on the side of a car or engine in the performance of his duty. The employee may rightfully assume, in the absence of notices to the contrary, that his employer has used reasonable care in furnishing him a safe place for the carrying on of his duties in the line of his employment.

## IV.

Appellant contends that Hayes, an engineer on the Missouri Pacific Railroad, when testifying as a witness for plaintiff, should not have been permitted to give his impressions of the clearances where that company's line of railroad paralleled the defendant's tracks on the other side of the Missouri River.

It is sufficient to dispose of this point to state that the record shows that the defendant made no objection when Hayes was on the stand for the first time and gave testimony on this point. While it is true that an objection was made when Hayes was recalled in rebuttal, this objection, however, we hold came too late. The matter having been testified to without objection in chief, the admission of the same testimony on rebuttal over objection will not be held prejudicial error. [Masonic Mut. Ben. Soc. v. Lackland, 97 Mo. 137, 10 S. W. 895; McPherson v. Andes, 75 Mo. App. 204.]

## V.

One of the counsel for plaintiff, in his argument to the jury, made a statement to the effect that plaintiff could not afford to call employees of the defendant to testify as witnesses, "because they would have lost their jobs if they had," whereupon counsel for defendant objected in the following language: "I object to that and ask that counsel be reprimanded for making that statement, that these employees would lose their jobs if they testified for the plaintiff." Thereupon the court stated: "There is no such testimony in the record." Counsel for plaintiff: "There is no such testimony but the fact remains that it is legitimate argument and the conduct of Mr. Snell on the stand makes it proper for me to make that statement." Counsel for defendant: "I except to the failure of the court to sufficiently reprimand counsel for that statement."

It will be noted that the exception to sufficiently reprimand adverts only to the first statement of counsel for plaintiff to which, upon objection being made, the court stated: "There is no such testimony in the record." The statement following that admonition on the part of the court was not objected to. In light of the record in this case we are unable to rule that the action of the court, in view of the statement of counsel for plaintiff, was such as could have prejudiced defendant in the eyes of the jury, and therefore rule this point against appellant.

## VI.

Complaint is also made of the action of the trial court in refusing three instructions requested by the defendant.

We have examined each of said instructions thus refused and it sufficiently appears from what we have already stated in this opinion that the court properly refused each of such instructions. A reading of all the instructions in the case shows that the court gave nine instructions for the defendant, in which the learned trial judge carefully narrowed the issues in the case to conform to the evidence, and such instructions fully and fairly covered the case.

Finding no prejudicial error in the record the judgment is affirmed.

*Reynolds, P. J.,* and *Allen, J.,* concur.